**2020 UT App 120**

### THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
THOMAS JEFFREY MILES,
Appellant.

Opinion
No. 20150809-CA
Filed August 20, 2020

Third District Court, Salt Lake Department
The Honorable Randall N. Skanchy
No. 141910634

Alexandra S. McCallum, Attorney for Appellant

Sean D. Reyes and John J. Nielsen, Attorneys
for Appellee

JUDGE KATE APPLEBY authored this Opinion, in which JUDGES
JILL M. POHLMAN and DIANA HAGEN concurred.

APPLEBY, Judge:

¶1 A jury convicted Thomas Jeffrey[1] Miles of forcible sodomy, a first-degree felony. Miles appeals, arguing his trial counsel provided constitutionally ineffective assistance by failing to object to the jury instruction on the mens rea element of recklessness and by not introducing certain evidence at trial. We temporarily remanded this case to the district court to enter additional findings related to the latter argument but are not

---

1. We are unsure what is the correct spelling of Miles's middle name because documents within the record use various spellings. This opinion adopts the spelling used in the charging document.

persuaded that Miles received ineffective assistance of counsel on either claim. Thus, we affirm.

BACKGROUND[2]

¶2 Miles posted an advertisement on a website known as Craigslist, seeking an "obedient submissive slut needed for group use" (the Craigslist ad). The Craigslist ad sought a partner willing to participate in various sexual activities, including "hair pulling, bondage, face smacking, double penetration, face fucking, choking, spanking and just rough sex in general." The Craigslist ad "included a questionnaire which asked . . . responding part[ies] to provide" their "name, age, height, weight, bra size, race, experience level, done dp, and limits." A woman (M.C.) responded to the Craigslist ad through an email that said, "I think I'm what you're looking for"; included her age, height, weight, bust measurements, and race; and responded to the questionnaire as follows:

Have you done dp? No

Limits: None

Tell us how you like to get fucked: From behind[3]

M.C. also sent Miles a video of herself masturbating.

---

2. "On appeal from a jury verdict, we view the evidence and all reasonable inferences in the light most favorable to that verdict and recite the facts accordingly. We present conflicting evidence when necessary to provide a full and fair understanding of the issues on appeal." *State v. Scott*, 2020 UT 13, ¶ 5 n.3, 462 P.3d 350 (quotation simplified).

3. M.C. testified that she understood this to mean "[v]aginal intercourse from behind."

¶3     Miles and M.C. exchanged a series of sexually explicit emails, but a few days later, M.C. said she "was no longer curious and was starting to be a little afraid of [Miles's] aggressive nature," so she "stopped replying." Miles, armed with M.C.'s name, found her profile on a social media site and used it to identify her employer and the university she was attending. He emailed M.C., "Hey slut[4] if you don't come take my cock I'm going to forward this video [of M.C. masturbating] to the head of human resources at [M.C.'s employer]. Come be a good little slut and I'll delete it." M.C. responded, "Hey. I'm sorry this isn't going to work out. . . . Good luck finding someone, I'm sure you'll all have a lot of fun together." But Miles replied, "Your life will be just fine if you obey me and do as you're told slut. . . . So are you going to be a good slut and do as you're told? I want you to come over . . . ."

¶4     M.C. did not respond, and Miles sent her another email that threatened to forward their email correspondence and the video of M.C. to her employer, the university, and a local news station if she did not meet him for a sexual encounter. Miles wrote, "I think not only will you lose your job but you'll be on the news and your reputation will probably be ruined." At trial, Miles claimed that after he sent that email, he "recanted [the] statement and told her she did not have to have sex with [him] or anything she did not want to do before she came over." But M.C. denied he withdrew the threat. Much of the parties' email correspondence, including the one email purportedly withdrawing Miles's threat, was never recovered and thus not introduced at trial.

¶5     M.C. agreed to meet Miles in a parking lot and from there followed him to his residence. She said she did not want to meet him but she "was scared of [the] repercussions" with the

---

4. Miles testified that the Craigslist ad sought "someone submissive," that he was a "dominant," and that calling M.C. "degrading names" was "all part of the role-play."

university and her employer and did not "want to embarrass" herself or her family.

¶6     Once at Miles's residence, Miles "immediately" told M.C. to undress, and she complied. The two engaged in five sexual acts in the following order: oral sex, vaginal sex, anal sex, oral sex, and vaginal sex. After the first instance of oral sex, Miles "told [M.C.] to get on the bed face down" and then he handcuffed her hands behind her back. M.C. remained handcuffed during the first act of vaginal sex and during the anal sex.

¶7     During the anal sex, M.C. testified that she was crying and told Miles, "no," "stop," and that "it hurt." Miles testified that that, before engaging in anal sex, M.C. "said she could handle it" and that they had anal sex "for about a minute to a minute and a half" until "she said she couldn't handle it anymore," when he "immediately stopped." But M.C. testified Miles "continued to penetrate [her] until he ejaculated." After the anal sex, Miles briefly left the room with M.C. lying face down on the bed with her hands still handcuffed. When Miles returned, he uncuffed M.C. and the two smoked marijuana before again engaging in oral and vaginal sex.

¶8     Miles testified that after all the sex acts, M.C. "left rather abruptly." He said M.C. was "visibly upset," "[h]er face was a little red, and she had some tears coming down her face. She was crying a little bit." Miles said she "seem[ed] a little bit upset that [he] wanted to see her again." M.C., on the other hand, testified that she was "crying and . . . saying no" throughout the encounter.

¶9     A few days later, Miles contacted M.C. and said he deleted the video she sent him, but then he claimed he took photographs and videos of their sexual encounter and threatened to send them to the media. At that point, M.C. contacted the police. The State charged Miles with two counts of rape (based on the instances of vaginal sex), and three

counts of forcible sodomy (based on the instances of oral sex and the instance of anal sex).

¶10 The case proceeded to a jury trial at which M.C. and Miles each testified. The Craigslist ad was not introduced into evidence. M.C. testified she could not "remember the [Craigslist ad's] exact wording." Miles testified that the title did not "reflect the actual ad" and that there was something "else" in it, but he did not testify to the ad's contents other than that it included the questionnaire, which he said he wrote.

¶11 The State advanced three theories to support M.C.'s lack of consent to the sexual acts. Its primary argument was that Miles extorted M.C. when he threatened to forward their correspondence and the video of M.C. to her employer, the university, and the media. The State also argued that M.C. "told [Miles] no," "to stop," that he "was hurting her," and that "she wanted to leave" throughout the encounter, but Miles "still had to finish." The State also argued that Miles overcame M.C. "through the application of physical force or violence" because he moved her head while she gave him oral sex and he put her in handcuffs. Miles's defense was that M.C. consented to all sexual acts.

¶12 The district court instructed the jury, as relevant here, that to find Miles guilty of forcible sodomy for the anal sex (Count 3), it must "find beyond a reasonable doubt" that Miles "intentionally, knowingly, or recklessly committed a sexual act involving any touching of the skin, however slight, of [his] genitals . . . and the . . . anus of . . . M.C.; without M.C.'s consent; and [Miles] acted with intent, knowledge or recklessness that M.C. did not consent."

¶13 In addition to instructions pertaining to intent and knowledge, with "[n]o objection" from Miles's defense counsel (Trial Counsel), the court instructed the jury that

A person acts "recklessly" when he is aware of a substantial and unjustifiable risk that:

1. certain circumstances exist relating to his conduct; or

2. his conduct will cause a particular result, but he consciously disregards the risk, and acts anyway.

The nature and extent of the risk must be of such a magnitude that disregarding it is a gross deviation from what an ordinary person would do in that situation.

"Conduct" means either an act or an omission.

¶14 The jury acquitted Miles on the four counts stemming from oral and vaginal sex and convicted him of forcible sodomy for Count 3.

*Rule 23B Remand*

¶15 Miles timely appealed, claiming, among other things, that he received ineffective assistance of counsel because Trial Counsel did not introduce the contents of the Craigslist ad into evidence. As part of his appeal, Miles asked us for a temporary remand to the district court pursuant to rule 23B of the Utah Rules of Appellate Procedure so the court could make additional findings. We granted his motion and remanded to the court to enter factual findings related to:

1. The content of the Craigslist ad;

2. The details available to defense counsel relating to the content of the Craigslist ad; and

3. Counsel's reasons for not investigating and introducing the content of the Craigslist ad at trial.

¶16    At the rule 23B hearing, the Craigslist ad was not introduced, but Trial Counsel, Miles, and M.C. testified to its contents. Trial Counsel testified that he had a copy of the Craigslist ad at the time of trial but chose not to use it because he "knew [he] would be able to elicit" the information from M.C. and Miles. He also said he did not want to send "a printed log . . . into the jury room" because it could have made Miles "look more . . . reprehensible" to the jury. Trial Counsel also testified that the Craigslist ad included "group sex" and "anal sex" and that Miles told him "specifically" what the ad said, although he could not recall its contents at the time of the rule 23B hearing.

¶17    Miles testified that the Craigslist ad had "a detailed list of the sexual activities," which included "double penetration" and "anal sex." M.C.'s testimony refuted Miles's claim that anal sex was mentioned in the Craigslist ad and characterized his testimony as "incorrect and a lie."

¶18    After taking the matter under advisement, the district court entered factual findings that (1) the Craigslist ad included "hair pulling, bondage, face smacking, double penetration, face fucking, choking, spanking and just rough sex in general," but did not include anal sex; (2) Trial Counsel had a copy of the Craigslist ad at the time of trial, discussed it with Miles, and investigated the ad's contents; and (3) after Trial Counsel "considered the evidential value of the Craigslist ad," he "intentionally chose not to introduce it," for the "strategic" reasons enumerated by Trial Counsel at the rule 23B hearing. The matter is before us again.

ISSUES AND STANDARDS OF REVIEW

¶19    Miles argues Trial Counsel rendered ineffective assistance of counsel in two respects. First, he claims Trial Counsel was ineffective when he did not object to the jury instructions defining recklessness. "When a claim of ineffective assistance of

counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *Layton City v. Carr*, 2014 UT App 227, ¶ 6, 336 P.3d 587 (quotation simplified).

¶20  Miles also argues Trial Counsel was ineffective for failing to introduce the contents of the Craigslist ad as evidence at trial.[5] Following our temporary remand under rule 23B of the Utah Rules of Appellate Procedure, the district court held a hearing and made factual findings relevant to this claim. "We defer to those factual findings, but determine as a matter of law whether [Miles] received ineffective assistance of counsel . . . ." *See State v. Maestas*, 2000 UT App 22, ¶ 10, 997 P.2d 314 (quotation simplified). And "we [will] set aside the rule 23B court's factual findings only if they are against the clear weight of the evidence or if we otherwise reach a definite and firm conviction that a mistake has been made." *State v. Drommond*, 2020 UT 50, ¶ 56 (quotation simplified).

ANALYSIS

I. Recklessness Instruction

¶21  Miles argues Trial Counsel rendered ineffective assistance by failing to object to the erroneous jury instruction on recklessness. To establish ineffective assistance of counsel, Miles

---

5. Miles also claims the cumulative effect of both alleged errors identified on appeal warrant reversal. "A reviewing court will reverse a jury verdict under the cumulative error doctrine only if the cumulative effect of the several errors undermines confidence that a fair trial was had." *State v. Carrick*, 2020 UT App 18, ¶ 25 n.4, 458 P.3d 1167 (quotation simplified). Because Miles has not successfully demonstrated error on appeal, "there are no errors to cumulate, and the doctrine is inapplicable." *Id.*

must show both that Trial Counsel's performance was objectively deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The "inability to establish either element defeats a claim for ineffective assistance of counsel." *State v. Lopez*, 2019 UT App 11, ¶ 23, 438 P.3d 950 (quotation simplified). We agree that the jury instruction was legally incorrect, but even assuming Trial Counsel performed deficiently by not objecting to it, Miles has failed to carry the heavy burden of demonstrating he was prejudiced by the error.

¶22    "An individual commits forcible sodomy when the actor commits sodomy upon another without the other's consent." Utah Code Ann. § 76-5-403(2) (LexisNexis Supp. 2019).[6] Because the forcible sodomy statute does not specify a mens rea, "we must turn to Utah Code section 76-2-102, which directs that 'when the definition of the offense does not specify a culpable mental state and the offense does not involve strict liability, intent, knowledge, or recklessness shall suffice to establish criminal responsibility.'" *State v. Nunez-Vasquez*, 2020 UT App 98, ¶ 45 (quoting Utah Code Ann. § 76-2-102 (LexisNexis 2017)). Thus, to convict Miles of forcible sodomy for Count 3, the State had to prove both that (1) Miles knowingly, intentionally, or recklessly had anal sex with M.C. without her consent and (2) Miles acted knowingly, intentionally, or recklessly as to M.C.'s lack of consent. *See State v. Barela*, 2015 UT 22, ¶ 26, 349 P.3d 676 (explaining the defendant's mens rea as to the victim's consent is a required element of rape). The instructions correctly informed the jury it must "find beyond a reasonable doubt" that Miles "intentionally, knowingly, or recklessly committed a sexual act involving any touching of the skin, however slight, of [his] genitals . . . and the . . . anus of . . . M.C. without M.C.'s consent

---

6. Because the provisions of the statute have not changed in any way material to our analysis, we cite the current version of the Utah Code for convenience.

and [Miles] acted with intent, knowledge, or recklessness that M.C. did not consent." (Quotation simplified.)

¶23    But the jury instructions were erroneous because they did not fully articulate the definition of recklessness. The jury was instructed, in relevant part,

> A person acts 'recklessly' when he is aware of a substantial and unjustifiable risk that:
>
> 1. certain circumstances exist relating to his conduct; or
>
> 2. his conduct will cause a particular result, but he consciously disregards the risk, and acts anyway.

By contrast, Utah Code section 76-2-103(3) explains,

> A person engages in conduct: . . . Recklessly with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

¶24    The jury instructions correctly informed the jury that Miles would have had to be aware of but consciously disregard the risk that his conduct would cause a particular result. But the instructions provided that Miles only had to have been *aware of* a substantial and unjustifiable risk that circumstances existed relating to his conduct—that is, that M.C. did not consent to anal sex. The instructions did not articulate that Miles would have had to *consciously disregard the risk* that M.C. did not consent to anal sex once he became aware of the risk, and thus, they were

legally incorrect. *See State v. Liti*, 2015 UT App 186, ¶¶ 14–16, 355 P.3d 1078 (determining recklessness instruction was incorrect because it did not follow the statutory language).

¶25    We need not decide whether the failure to object to the erroneous jury instruction fell below an objective standard of reasonableness. Even assuming Trial Counsel's performance was deficient in this regard, we conclude that Miles has not established prejudice because we are not persuaded there is a reasonable likelihood that the result of Miles's trial would have been different.

¶26    To determine whether Miles was prejudiced by the erroneous recklessness instruction, we "must consider the totality of the evidence before the . . . jury and then ask if [Miles] has met the burden of showing that the decision reached would reasonably likely have been different absent the error[]." *See State v. Garcia*, 2017 UT 53, ¶ 42, 424 P.3d 171 (quotation simplified). "Prejudicial error occurs when there is a reasonable probability that but for the alleged errors, the result of the proceeding would have been different." *State v. Norton*, 2020 UT 46, ¶ 35 (quotation simplified). "To determine whether the omission of an element from a jury instruction is prejudicial, we analyze whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element." *Id.* ¶ 41 (quotation simplified). Because there was overwhelming evidence in the record to support a finding that Miles consciously disregarded M.C.'s lack of consent to the anal sex, he has not overcome the "relatively high hurdle" of proving he was prejudiced by the recklessness instruction. *See Garcia*, 2017 UT 53, ¶ 44.

¶27    First, although the jury instruction defining recklessness was erroneous, in this case it is a distinction without a difference. Based on the instructions, the jury could have found Miles was aware of a substantial and unjustifiable risk as to M.C.'s lack of consent. The instructions also required the jury to find that Miles "*acted* with intent, knowledge or recklessness that M.C. did not

consent" (emphasis added), which defeats his argument that he could have been convicted even if the jury believed his account that he "immediately stopped" as soon as he knew M.C.'s consent ended. Because the jury had to at least find Miles acted despite the risk that M.C. did not consent to the anal sex, Miles was not prejudiced by the erroneous jury instruction.

¶28 Further, the State presented multiple theories of Miles's intent, knowledge, or recklessness as to M.C.'s consent. Its main argument was that Miles extorted M.C. by threatening to forward their correspondence and the video of M.C. to her employer, the university, and the media. The State also argued that M.C. "told [Miles] no," "to stop," that he "was hurting her," and that "she wanted to leave," but Miles "still had to finish." In addition, the State argued Miles overcame M.C. "through the application of physical force or violence" because he put M.C. in handcuffs before they engaged in anal sex.

¶29 Under any—or a combination of—these theories, the evidence was overwhelming that Miles at least consciously disregarded the risk that M.C. did not consent to anal sex. As to the extortion theory, the State introduced multiple emails from Miles to M.C. that threatened her job, her status at the university, and her reputation if she failed to meet him for the desired sexual acts. The State also introduced the email from M.C. that said she was no longer interested in meeting Miles. And M.C. testified that she did not want to meet Miles but did so solely for the purpose of preventing him from releasing the emails and video.

¶30 Additionally, M.C. and Miles each testified that, at some point during the anal sex, M.C. voiced, at a minimum, discomfort. Not only did M.C. testify that she was crying and said "no," "stop," and "it hurt" throughout the anal sex, Miles also admitted that she told him "she couldn't handle it anymore." This statement, combined with M.C.'s testimony, is compelling proof that Miles was aware M.C.'s consent had ended. Miles argues that M.C.'s statement that the "it" in "I can't

handle it anymore" could have been "the speed of the intercourse," the "roughness of the anal sex," or the "way Miles was 'moving back and forth.'" (Quotation simplified.) In other words, he suggests that what M.C. said was ambiguous, and therefore he did not consciously disregard the risk that she withdrew her consent. But he also testified that he "immediately stopped" once M.C. made the statement, which shows he understood M.C. meant "it" to be the anal sex. If the jury credited M.C.'s account that Miles ignored M.C.'s protests and "continued to penetrate [her] until he ejaculated," the evidence presented would be overwhelming that he at least consciously disregarded the risk of her non-consent. Put another way, under this theory, the verdict turned on whether the jury believed Miles's claim that he "immediately stopped." If the jury found that he did not, Miles's own admission that he understood M.C. wanted him to stop would establish that he acted with the requisite mens rea. Thus, there is no reasonable likelihood that the error in the recklessness instruction affected the verdict.

¶31 Miles argues that, because he was acquitted of the other four counts, "there [i]s a reasonable likelihood of a different result but for the omission in the recklessness instruction." While at first blush, it seems inconsistent that the jury would acquit on the first two counts, convict on the third, and acquit on the last two, we "must consider the totality of the evidence before the . . . jury and then ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the error[]." *State v. Parkinson*, 2018 UT App 62, ¶ 12, 427 P.3d 246 (quotation simplified). And the totality of the evidence before the jury in this case establishes there was more evidence that M.C. vocalized her lack of consent to the anal sex than to the other sex acts. Indeed, both Miles and M.C. testified to that fact. Their testimonies only differed in regard to whether Miles "immediately stopped," as he claimed or, as M.C. testified and the State argued in closing, whether Miles continued despite her protests because he "had to finish." Even if the jury did not credit M.C.'s testimony "lock, stock, and barrel" because it acquitted Miles of the other four counts, *see*

*State v. Barela*, 2015 UT 22, ¶ 30, 349 P.3d 676, it does not necessarily follow that there is a reasonable likelihood that the jury would have acquitted on Count 3 had the recklessness instruction been different. Instead, it is more likely that the evidence of the extortion, the testimony from M.C. and Miles that M.C. said no during anal sex, and the evidence that Miles restrained M.C. resolved any reasonable doubt the jury may have had about M.C.'s lack of consent to the anal sex.

¶32   Because there is overwhelming evidence in the record supporting the conclusion that Miles at least consciously disregarded the risk of M.C.'s non-consent, there is no reasonable probability that the result would have been different if the jury instructions had properly included that language. Therefore, Miles has not established he was prejudiced when Trial Counsel did not object to the erroneous recklessness instruction. Accordingly, his ineffective assistance of counsel claim on this issue fails.

## II. Failure to Introduce Contents of the Craigslist Ad

¶33   Miles next argues he received ineffective assistance of counsel because Trial Counsel did not introduce the contents of the Craigslist ad at trial. As part of this claim, he alleges the district court clearly erred in determining the Craigslist ad did not include "anal sex" in the list of sexual activities Miles sought.

A.   The District Court's Factual Findings Are Not Clearly Erroneous

¶34   Miles argues the district court's finding on remand that anal sex was not listed in the Craigslist ad was against the clear weight of the evidence. He points out that, of the three witnesses who testified at the rule 23B hearing, two (Miles and Trial Counsel) testified that the ad included anal sex. In the alternative, Miles argues, even if that finding is not clearly erroneous, "the Craigslist ad alluded to anal sex by seeking a partner willing to engage in 'double penetration.'" Following a

rule 23B hearing, we review the district court's factual findings for clear error. *State v. Kozlov*, 2012 UT App 114, ¶ 65, 276 P.3d 1207. To demonstrate clear error, Miles "bears the heavy burden of demonstrating that the finding is clearly erroneous and must do so by showing that the finding is without adequate evidentiary support or was induced by an erroneous view of the law." *R.B. v. L.B.*, 2014 UT App 270, ¶ 26, 339 P.3d 137. And because of the district court's "advantaged position in observing the witnesses firsthand," we defer to its credibility findings. *In re J.E.G.*, 2020 UT App 94, ¶ 24; *State v. Skinner*, 2020 UT App 3, ¶ 20, 457 P.3d 421.

¶35 On remand, the district court was asked to enter findings, as relevant to this analysis, related to the contents of the Craigslist ad. Trial Counsel, Miles, and M.C. each testified at the rule 23B hearing. Trial Counsel testified that the ad included "talk of anal sex," and Miles testified that the ad included "anal sex" and "double penetration." M.C. refuted that anal sex was in the ad as "a lie," although she could not recall the ad's specific wording and she "did not dispute that the ad sought a partner willing to participate in 'double penetration.'"[7]

¶36 In its factual findings, the district court determined "anal sex" was not in the Craigslist ad because M.C. was "a more credible witness than . . . Miles." Although the court did not opine on Trial Counsel's credibility as to this point, it did note that Trial Counsel "testified that he did not recall the specific contents of the Craigslist ad" and that Trial Counsel thought M.C.'s "testimony at trial seemed 'honest and up-front about what was in the ad and what took place.'"

---

7. Although M.C. and Miles agree that the ad "sought a partner willing to participate in 'double penetration,'" each party ascribed a different meaning to the term. On appeal, Miles asserts "double penetration" encompasses a combination of anal, oral, and vaginal sex, but no evidence at trial or at the rule 23B hearing indicates that this is what M.C. understood it to mean.

¶37   Given the evidence relied on by the court, it was not clearly erroneous for it to find that the Craigslist ad did not include anal sex in its list of sexual activities. And as Miles argues, "double penetration" merely "suggests that the act of penetration is 'double'" and can encompass any combination of anal, oral, and vaginal sex. Accordingly, it does not follow that "double penetration" definitively includes anal sex in each instance, and Miles has not presented sufficient evidence to prove otherwise.

B.    Trial Counsel Was Not Objectively Deficient

¶38   As noted above, to prevail on a claim of ineffective assistance of counsel, the appellant must establish both objectively deficient performance by counsel and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). When determining whether counsel rendered objectively deficient performance, we consider "all the circumstances" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Furthermore, we give wide latitude to trial counsel to make tactical decisions and will not question such decisions unless there is no reasonable basis supporting them." *State v. Gallegos*, 2020 UT 19, ¶ 34, 463 P.3d 641 (quotation simplified). Miles has not shown Trial Counsel was objectively unreasonable when he chose not to introduce the contents of the Craigslist ad into evidence.

¶39   Miles contends that if the contents of the Craigslist ad had been introduced during trial, the jury would have acquitted him of Count 3 because the ad specified anal sex as one of many sexual acts in which he sought a partner to engage.[8] But the

---

8. We also note that even if the Craigslist ad could be used to infer M.C.'s initial willingness to consent to any of the enumerated sexual acts within it, she was free to withhold or withdraw her consent at any point. *See, e.g.*, *In re J.A.M.*, 2020 UT App 103, ¶ 17.

district court, upon remand, determined the ad did not include a reference to anal sex, and as explained *supra* ¶¶ 34–37, Miles has not met the burden to overturn the court's factual finding. *See Brown v. State*, 2013 UT 42, ¶ 69 n.63, 308 P.3d 486 ("The burden of overturning factual findings is a heavy one." (quotation simplified)).

¶40    "The threshold question under *Strickland* is not whether some strategy other than the one that counsel employed looks superior given the actual results of trial. It is whether a reasonable, competent lawyer could have chosen the strategy that was employed in the real-time context of trial." *State v. Barela*, 2015 UT 22, ¶ 21, 349 P.3d 676. "Trial counsel is not deficient when making tactical decisions, and courts will not question such decisions unless there is no reasonable basis supporting them." *State v. Morley*, 2019 UT App 172, ¶ 30, 452 P.3d 529 (quotation simplified).

¶41    Trial Counsel explained that he did not introduce the Craigslist ad into evidence because he thought he would be able to elicit the same information through M.C.'s and Miles's testimony. He also did not want to introduce a "printed log" that could have made Miles "look more . . . reprehensible" to the jury, and although the district court found Trial Counsel was "inconsistent on this point," Trial Counsel also said "[h]e did not think the ad was exculpatory or relevant to consent." Trial Counsel also expressed the opinion "[t]hat a Utah jury would have difficulty accepting that anybody would consent to anal sex." Under the circumstances of this case, it was objectively reasonable for Trial Counsel to choose to rely on testimony to introduce evidence of the contents of the Craigslist ad instead of the ad itself.

¶42    Because "[w]e may not evaluate counsel's conduct from the hindsight-biased vantage point of the appeal," and instead "must consider whether [Trial Counsel's] decision to [not introduce the contents of the Craigslist ad] was reasonable at the time he made this decision," *see Barela*, 2015 UT 22, ¶ 22, we

conclude Trial Counsel's decision was objectively reasonable trial strategy, *see Gallegos*, 2020 UT 19, ¶ 47 ("The *Strickland* inquiry is objective, not subjective."). And although the ultimate determination of deficient performance does not require a finding of reasonable trial strategy, "[i]f an attorney's decisions can be explained by a reasonable trial strategy, the defendant has necessarily failed to show deficient performance." *Id.* ¶ 56; *see also State v. Scott*, 2020 UT 13, ¶ 36, 462 P.3d 350; *State v. Ray*, 2020 UT 12, ¶ 34.

¶43   Because there are several objectively reasonable strategies behind Trial Counsel's choice to not introduce the contents of the Craigslist ad into evidence, Miles "has necessarily failed to show deficient performance." *See Gallegos*, 2020 UT 19, ¶ 56. Accordingly, his ineffective assistance of counsel claim fails.

CONCLUSION

¶44   Miles has not shown that he received ineffective assistance of counsel because he was not prejudiced by the erroneous jury instruction and he has not demonstrated Trial Counsel's failure to introduce the contents of the Craigslist ad was objectively deficient performance.

¶45   Affirmed.

———————