**2024 UT App 127**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
OMAR HERNANDEZ,
Appellant.

Opinion
No. 20220416-CA
Filed September 12, 2024

Third District Court, Salt Lake Department
The Honorable James T. Blanch
No. 181906502

Lori J. Seppi, Attorney for Appellant

Simarjit S. Gill and Chelsey Kenney,
Attorneys for Appellee

JUDGE AMY J. OLIVER authored this Opinion, in which
JUDGES GREGORY K. ORME and RYAN D. TENNEY concurred.

OLIVER, Judge:

¶1     Omar Hernandez's interaction with an undercover detective led to his conviction for patronizing a prostitute. On appeal, Hernandez raises several arguments, including that there was insufficient evidence to convict him because the undercover detective's testimony should have been disregarded as inherently improbable, that other portions of witness testimony were improperly admitted, and that the jury instructions omitted an element of the offense. We disagree and affirm his conviction.

BACKGROUND[1]

¶2    Shortly after Hernandez pulled into a fast-food restaurant parking lot in an area known for prostitution, an undercover detective (Detective 1) approached the passenger side of his car and asked if he wanted "a date"—a term commonly used by prostitutes or their patrons to refer to sex for hire. Hernandez said yes and invited Detective 1 to get into his car. Detective 1 declined but asked Hernandez if he wanted to "fuck" or if he wanted a "blowjob." Hernandez said, "I want to make it worth your while," and pulled out a $5 bill and several $1 bills. When Detective 1 said, "I'm not fucking you for $5," Hernandez pulled out a $50 bill. Detective 1 then asked Hernandez whether he had a condom, and when he indicated that he did, she told him to meet her at the convenience store next door. Hernandez drove out of the parking lot, and Detective 1 alerted other undercover officers and "takedown units" stationed nearby that she "had a sex act for hire."

¶3    After receiving the "done-deal" signal, another undercover detective (Detective 2) observed Hernandez drive to the convenience store and go inside. A "few minutes later" Detective 2 saw Hernandez leave the store, get back into his car and circle around the block. As Hernandez attempted to drive back into the restaurant parking lot, he was arrested by Detective 2. Inside his car, officers found a $100 bill and several $50, $5, and $1 bills. Hernandez told Detective 2 that Detective 1 "had approached him" and asked if he wanted a date. He said he had told her "yeah," but he "didn't know exactly what she meant." He denied having had any conversation about sex. And he told Detective 2 that he thought Detective 1 truly wanted to go on a date and was

---

1. "We recite the facts in the light most favorable to the jury's verdict, and we present conflicting evidence as necessary to understand issues raised on appeal." *State v. Black*, 2015 UT App 30, ¶ 2, 344 P.3d 644.

asking if he had money to make sure he "would be able to take care of her."

¶4 Hernandez was charged with one count of patronizing a prostitute, a class A misdemeanor. Before trial, Hernandez filed a "Motion to Dismiss for Entrapment," arguing the court should dismiss the charge with prejudice because Detective 1 "manufactured" the crime and actively induced Hernandez into committing it. The district court granted the motion, dismissing the charge with prejudice. The State appealed the dismissal and this court reversed, concluding Hernandez had not been entrapped as a matter of law. *See State v. Hernandez*, 2020 UT App 58, ¶ 15, 462 P.3d 1283.

¶5 The case was then remitted to the district court and proceeded to trial. At trial, Detective 1 testified about her interaction with Hernandez, which had occurred nearly four years prior. She indicated that she had participated in "well over a hundred sting operations or arrests" while undercover and that the restaurant parking lot was located in a "high-level" crime area known for prostitution. Detective 1 could not recall what she was wearing that day, but testified that when undercover, she typically "dressed down" to "look transient." She also could not remember whether Hernandez waved her over first or whether she made small talk with him, but she said her conversation with Hernandez had been "very brief" before he agreed to sex. She testified that during this conversation, she had used common street terms like "date," "fuck," and "blowjob," which Hernandez would have been familiar with if he was seeking a prostitute. And she testified that when other potential "johns"[2] reject her, they "roll up their window or tell [her] to leave or drive away" and act

---

2. Detective 2 testified that the term "johns" is used to refer to "men who are looking to engage in prostitution and sexual solicitation." The parties use the term as such throughout their briefing, and we do the same.

"surprised," "shocked," and "disgusted." She testified that "a lot" of vehicles "circle that area multiple times" and pull into the parking lot, "wait[ing] for the prostitutes to approach" and "there's really no reason for them to park so far away from the [restaurant] . . . unless they're trying to make contact" with prostitutes.

¶6 Detective 1 also testified about the dangers of undercover work, the necessity of having backup officers and marked units nearby, and safety precautions to prevent her from being exposed as undercover. She then testified that in her written report, she had included only those facts she considered "legally significant," meaning they showed the "elements of the crime, which would be [Hernandez] agreeing to a specific sex act and what the amount was." Detective 1 indicated she had written as many as eight similar reports that same day.

¶7 Detective 2 testified that he had participated in hundreds of undercover operations in this area. He related that on the day in question, Detective 2 watched Detective 1 approach Hernandez's car and he received the "done-deal" signal from her. Detective 2 testified that he watched Hernandez enter the convenience store and circle around the block, and he saw the takedown units pull Hernandez over just as he entered the parking lot for the second time. He testified that it was "typical behavior" for johns to circle around the block to "look for takedown units, [and] other police officers that might be in the area" or to circle around the parking lot to contact a potential prostitute. Detective 2 also testified that the amount of cash Hernandez had with him was "unusual" and "consistent with someone seeking to pay for a prostitute." And he testified about how working undercover is "more dangerous" than working a normal patrol and how Detective 1 could be "shot, stabbed, assaulted, robbed, kidnapped"—"[r]eally anything you could imagine" could happen to her if she were exposed while undercover.

¶8    After the State rested, Hernandez's counsel (Counsel) moved for a directed verdict based on a theory of entrapment, which the court denied. Hernandez rested his case without presenting any evidence. The court then discussed the jury instructions with the parties. The State stipulated to the instructions, but Counsel objected to the instruction on entrapment, which objection the court resolved. During closing arguments, Counsel focused heavily on the defense's theory that Hernandez had been entrapped, stating he found it "disgusting" and "disheartening" that the undercover detectives were "out actively looking for business to engage people." The jury found Hernandez guilty.

¶9    Counsel then made an oral motion to arrest judgment, arguing briefly that "a reasonable jury could have come to [the] conclusion" that Hernandez did not commit the offense, and thus urging the court to override the verdict in Hernandez's favor. The court denied the motion because it concluded there was enough evidence that a reasonable jury could find that there was an agreement to have sex and, though it was a close call, there was enough evidence that a reasonable jury could have reasonable doubt as to whether entrapment occurred. Hernandez was then sentenced to a suspended jail term of 364 days, placed on probation for eighteen months, and ordered to pay a $2,500 fine.

ISSUES AND STANDARDS OF REVIEW

¶10   On appeal, Hernandez presents several issues for review. First, he argues the State's evidence was insufficient to support a conviction because Detective 1's testimony should have been disregarded as inherently improbable.[3] Next, he argues that

---

3. Although the parties agree with each other that this issue was preserved by Hernandez's motion for a directed verdict and

(continued…)

Detective 1's and Detective 2's testimony about his agreement to exchange sex for money, the typical behavior of johns, and the dangers of undercover work was improperly admitted. Finally, he argues an instruction given to the jury omitted an element of the statutory offense. Because each of these issues is unpreserved, Hernandez urges us to review them for ineffective assistance of counsel and plain error. "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Popp*, 2019 UT App 173, ¶ 19, 453 P.3d 657 (cleaned up). And "plain error is a question of law reviewed for correctness." *Id.* (cleaned up).

---

motion for judgment as a matter of law, "we have stated that a directed verdict motion that makes general assertions but fails to assert the specific argument raised on appeal is insufficient to preserve the more specific argument," *State v. Skinner*, 2020 UT App 3, ¶ 23, 457 P.3d 421 (cleaned up). The inherent improbability claim Hernandez makes here is "unique," *id.* ¶ 24, stemming from our supreme court's decision in *State v. Robbins*, 2009 UT 23, 210 P.3d 288. A *Robbins* claim "that a particular witness's testimony is inherently improbable is not the same as a claim that the State's evidence is insufficient." *Skinner*, 2020 UT App 3, ¶ 24. And while a *Robbins* claim "may be a component of an insufficiency challenge," "not every insufficiency challenge raises a *Robbins* issue." *State v. Doyle*, 2018 UT App 239, ¶ 19, 437 P.3d 1266. Based on Hernandez's motions, "the district court never would have known that [Hernandez] wanted it to assess . . . inherent improbability," and thus the court "did not have an opportunity to rule on the *Robbins* issue." *State v. Stricklan*, 2020 UT 65, ¶ 128, 477 P.3d 1251. Thus, we conclude Hernandez's "general" sufficiency motions did not preserve the "specific inherent improbability" claim he now raises on appeal. *State v. Lewis*, 2020 UT App 132, ¶ 45 n.5, 475 P.3d 956.

ANALYSIS

¶11　Hernandez asks us to review his unpreserved claims for both ineffective assistance of counsel and plain error. In order to show ineffective assistance, Hernandez must "demonstrate both that Counsel's performance was deficient, in that it fell below an objective standard of reasonable professional judgment, and that Counsel's deficient performance prejudiced him." *State v. Powell*, 2020 UT App 63, ¶ 19, 463 P.3d 705 (cleaned up). "Both elements must be present, and if either is lacking, the claim fails and the court need not address the other." *Id.* (cleaned up). And to prevail on his claims of plain error, Hernandez "must establish that (i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful." *State v. Popp*, 2019 UT App 173, ¶ 35, 453 P.3d 657 (cleaned up). Hernandez must "satisfy all three requirements to succeed." *Id.* ¶ 36. With this in mind, we address each of Hernandez's claims.

I. Inherent Improbability of Detective 1's Testimony

¶12　First, Hernandez argues Detective 1's testimony should have been disregarded as inherently improbable, and without it, the State's evidence was too sparse to support his conviction. He argues Counsel provided ineffective assistance in failing to raise the issue at trial. And he argues the district court plainly erred in not sua sponte disregarding the testimony when ruling on the motion to arrest judgment. We disagree.

¶13　Appellate courts "are not normally in the business of reassessing or reweighing evidence," and "resolve conflicts in the evidence in favor of the jury verdict." *State v. Prater*, 2017 UT 13, ¶ 32, 392 P.3d 398 (cleaned up). But in certain "unusual circumstances," testimony may be "so inconclusive or inherently improbable that it could not support a finding of guilt beyond a reasonable doubt." *Id.* (cleaned up). Witness testimony that leaves "reasonable minds" with "a reasonable doubt that the defendant

committed the crime" may be disregarded as inherently improbable. *State v. Jok*, 2021 UT 35, ¶ 32, 493 P.3d 665 (cleaned up). In determining whether witness testimony is inherently improbable, courts may examine the existence of three factors— "material inconsistencies, patent falsehoods, and lack of corroborating evidence,"—but should be wary of "inflexible reliance on these factors." *Id.* (cleaned up). Ultimately, "when weighing the testimony in light of the other evidence, the testimony of the witness must run so counter to human experience that it renders the testimony inappropriate for consideration in sustaining a finding of guilt." *Id.* ¶ 36 (cleaned up). Detective 1's testimony does not meet this high bar.

¶14 Hernandez points to Detective 1's inability to remember details such as what she was wearing and whether she had tattoos when she interacted with Hernandez, what time of day the interaction occurred, whether Hernandez made eye contact with her before she approached, whether his car window was up or down, which way his car was parked, or the "exact conversation" she had with him. And he makes much of Detective 1's uncertainty about when, during their conversation, Hernandez showed her his money. But her lack of memory about these details does not invalidate her memory about whether Hernandez agreed to exchange sex for money. "Inconsistencies with respect to peripheral issues or details . . . will generally not implicate the inherent-improbability doctrine but are matters for the jury to resolve in assessing the witness's credibility." *State v. Kamrowski*, 2015 UT App 75, ¶ 16, 347 P.3d 861 (cleaned up). And the jury was "free to believe or disbelieve all or part" of Detective 1's testimony. *State v. Torres*, 2018 UT App 113, ¶ 20, 427 P.3d 550 (cleaned up). Detective 1 memorialized and remembered the most important details of her interaction with Hernandez. We fail to see how her inability to remember other "peripheral issues or details" about the brief interaction would "cast doubt on" the "central allegation." *State v. Jok*, 2019 UT App 138, ¶¶ 22–23, 449 P.3d 610

(cleaned up), *aff'd*, 2021 UT 35, 493 P.3d 665. And her testimony falls far short of running counter to human experience.

¶15    "[A]n inherent improbability claim will necessarily fail where *any* evidence corroborates the witness's testimony." *State v. Skinner*, 2020 UT App 3, ¶ 31, 457 P.3d 421 (emphasis added). Here, Detective 1's testimony was supported by corroborating evidence. Detective 2 testified that the restaurant parking lot was located in an area known for prostitution. He observed Detective 1 approach Hernandez's car, and he testified that Hernandez did not try to drive away from Detective 1 until after Detective 1 gave the "done-deal" signal. Detective 2 testified that he saw Hernandez drive to the convenience store next door, as Detective 1 had instructed him to do. And he testified about Hernandez circling the block and driving back into the parking lot— something someone rejecting Detective 1's advances was not likely to do. In fact, Detective 2 testified that this was behavior that was common for potential johns. And he testified that inside Hernandez's car, he discovered several denominations of cash, consistent with someone looking to exchange money for sex. Hernandez admitted to Detective 2 that he agreed to a "date" with Detective 1. Photos of Hernandez and the cash inside his car were admitted as trial exhibits. Thus, Hernandez's claim that Detective 1's testimony should have been disregarded and, without it, the evidence was insufficient to support his conviction necessarily fails.

¶16    It was therefore reasonable for Counsel to forgo requesting the testimony be wholesale disregarded as inherently improbable. *See State v. Whytock*, 2020 UT App 107, ¶ 43, 469 P.3d 1150 ("[W]hen seeking particular relief would be futile, an attorney does not perform deficiently by failing to seek it."). And because Detective 1's testimony was not inherently improbable, the district court did not plainly err in failing to sua sponte strike it. *See State v. Popp*, 2019 UT App 173, ¶ 35, 453 P.3d 657 (stating that plain error requires, of course, a showing of error).

II. Hernandez's Agreement to Pay for Sex

¶17   Next, Hernandez takes issue with Detective 1's testimony that Hernandez "agreed to a sex act in exchange for money" and Detective 2's testimony about receiving a signal from Detective 1 that "a deal had been done for sex solicitation." He argues this testimony violated rules 702, 704, and 403 of the Utah Rules of Evidence and that Counsel provided ineffective assistance in failing to object to its admission. And he argues the district court plainly erred in failing to sua sponte strike the testimony. We are not persuaded.

¶18   Rules 702 and 704 apply only to expert testimony. *See* Utah R. Evid. 702(a) (allowing "a witness who is qualified as an expert by knowledge, skill, experience, training, or education" to "testify in the form of an opinion or otherwise" if the expert's knowledge "will help the trier of fact"); *id.* R. 704(b) (preventing "an expert witness" from stating "an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense"). But the detectives did not offer expert testimony on this issue.

¶19   Expert testimony "requires that the witness have scientific, technical, or other specialized knowledge; in other words, whether an average bystander would be able to provide the same testimony." *State v. Rothlisberger*, 2006 UT 49, ¶ 34, 147 P.3d 1176; *accord* Utah R. Evid. 701(c). Detective 1 testified that she disengaged from her conversation with Hernandez because "he had agreed to a sex act in exchange for money" and she informed the other officers that she "had a sex act for hire." She was testifying about her direct experience with Hernandez. Detective 2 testified that he received the "done-deal" signal from Detective 1, indicating that a "deal had been done for sex solicitation." These were also his direct observations. The detectives did not need specialized knowledge to interpret Hernandez's assent as an agreement to pay for sex. And we fail to see how the detectives

could have explained the interaction with Hernandez any other way. Thus, this testimony did not implicate either rule 702 or 704.

¶20    Hernandez also argues Counsel should have objected to Detective 1's testimony under rule 403, which allows otherwise relevant evidence to be excluded if "its probative value is substantially outweighed by a danger of . . . unfair prejudice." Utah R. Evid. 403. Although Hernandez agrees with the State's contention that this testimony was "undeniably probative," he argues this probative value was substantially outweighed by unfair prejudice because the testimony was a legal conclusion, which "told the jury what result to reach." But the detectives were not testifying that Hernandez "agreed" to pay for sex in the legal sense.[4] They were testifying about their direct observations of the interaction. The jury was instructed that it was to "decide if the defendant is guilty or not guilty" and that it should presume Hernandez was innocent in the meantime. Thus, the jurors knew that it was their job to determine Hernandez's guilt—not Detective 1's job. *See State v. Sorenson*, 2023 UT App 159, ¶ 28, 542 P.3d 529. So even if the detectives' factual testimony prejudiced Hernandez, any such prejudice was not unfair prejudice that outweighed—let alone substantially outweighed—its crucial probative value.

¶21    Because any objection to the detectives' testimony about Hernandez's agreement to exchange money for sex would be unlikely to succeed under rules 702, 704, or 403, Counsel did not render deficient performance in failing to object. *See State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546 ("Failure to raise futile objections does not constitute ineffective assistance of counsel."). And because this testimony did not violate these rules, the district court did not

---

4. The State asked Detective 1 what she considered to be "legally significant" enough to include in her report of the incident. But the resulting testimony was limited to Detective 1 explaining the information that she recorded in her report.

err in failing to sua sponte intervene to prevent its admission. *See State v. Boyer*, 2020 UT App 23, ¶ 48, 460 P.3d 569 (holding that where counsel did not object to admissible testimony, "the district court did not plainly err by not excluding the testimony sua sponte").

### III. Typical Behavior of Johns

¶22 Hernandez argues Counsel was ineffective for not objecting to the detectives' testimony about typical behavior of johns under rules 702 and 403 of the Utah Rules of Evidence. He also argues the district court plainly erred in not sua sponte striking this testimony. The State concedes that this was expert testimony under rule 702, so Hernandez must demonstrate that an objection would have been successful. We conclude that he has fallen short of meeting this burden.

¶23 Both detectives testified about their experience participating in "hundreds" of other prostitution stings, including in that particular location. Detective 1 then testified as to the behaviors typical of johns in that location and the street meaning of terminology she used in her interactions with Hernandez, such as "date," "fuck," and "blowjob." Detective 2 testified that the amount of cash found on Hernandez was "consistent with someone seeking to pay for a prostitute." This type of testimony "is the quintessential expression of the precept that law enforcement officers may offer expert testimony on a range of subjects," such as the behavior of johns. *State v. Bowdrey*, 2024 UT App 113, ¶ 28 (cleaned up) (holding expert testimony from law enforcement on the behavior of drug dealers was admissible under rule 702). And it did not run afoul of rule 403 because the detectives "did not testify as to whether [Hernandez] was telling the truth or whether he was statistically more likely to be [guilty] of the charged crime." *State v. Nunez-Vasquez*, 2020 UT App 98, ¶ 66, 468 P.3d 585 (cleaned up). Rather, the testimony explained

to the jury the specific interaction between Detective 1 and Hernandez. Thus, the testimony was not improper.

¶24    Because the detectives' testimony about the behavior of johns was admissible, Counsel was not ineffective for failing to object, and the district court did not plainly err when it did not intervene to strike the testimony. *See State v. Boyer*, 2020 UT App 23, ¶ 48, 460 P.3d 569.

### IV. Dangers of Undercover Work

¶25    Hernandez asserts that Counsel was ineffective for failing to object to the detectives' testimony about the dangers of undercover work under rule 403 of the Utah Rules of Evidence. He also argues the district court plainly erred in not sua sponte striking this portion of the detectives' testimony. But we need not determine whether Counsel's performance was deficient or the district court plainly erred because Hernandez cannot show prejudice.

¶26    To evaluate whether a defendant has established prejudice for an ineffective assistance claim, we "consider a hypothetical—an alternative universe" where the testimony was not presented to the jury. *State v. Garcia-Flores*, 2021 UT App 97, ¶ 27, 497 P.3d 847 (cleaned up). We ask "whether, in the absence of the improperly admitted evidence, the likelihood of a different outcome is sufficiently high to undermine our confidence in the verdict." *State v. Aiken*, 2023 UT App 44, ¶ 51, 530 P.3d 148 (cleaned up), *cert. denied*, 537 P.3d 1010 (Utah 2023). Here, had Counsel successfully objected to the detectives' testimony about the dangers of undercover work, we fail to see a reasonable likelihood of a more favorable outcome for Hernandez.

¶27    The testimony of both Detective 1 and Detective 2 about the dangerous nature of undercover operations focused on explaining the logistics of their work. For instance, Detective 1

testified as to why it was important to have safety precautions, such as backup officers nearby and protocols for how to respond to various circumstances. But none of the dangers that the detectives testified about actually occurred in this case. At most, this testimony informed the jury that undercover work had the potential to be dangerous. Had the jury not heard this testimony, it would have been presented with the same factual scenario that it heard at trial regarding Detective 1's interaction with Hernandez. And nothing in that testimony described the interaction as dangerous. Thus, Hernandez has failed to demonstrate prejudice.

¶28   Because both ineffective assistance and plain error require a showing of prejudice, "failure to meet the plain error requirement of prejudice means that the defendant likewise fails to meet the required showing under the ineffective assistance of counsel standard" and vice versa. *State v. Popp*, 2019 UT App 173, ¶ 40, 453 P.3d 657 (cleaned up). Accordingly, both Hernandez's ineffective assistance and plain error claims fail.

## V. Erroneous Jury Instruction

¶29   Lastly, Hernandez argues Counsel should have objected to an incorrect jury instruction on the elements of the offense. And he argues the district court plainly erred in submitting the flawed instruction to the jury. Instruction 29 informed the jury that it must find

1.   That the defendant, OMAR HERNANDEZ;
2.   acting intentionally;
3.   did either:
   I.   pay; OR
   II.   offer; OR
   III.   agree to pay;

4.    *another person* either a fee OR the functional equivalent of a fee;

5.    for the purpose of engaging in an act of sexual activity . . . .

(Emphasis added.) The relevant statute provided at the time that

(1) An individual is guilty of patronizing a prostitute when the individual:

(a) pays or offers or agrees to pay *a prostitute, or an individual the actor believes to be a prostitute*, a fee, or the functional equivalent of a fee, for the purpose of engaging in an act of sexual activity . . . .

Utah Code § 76-10-1303(1)(a) (2021) (emphasis added). Thus, Instruction 29 instructed the jury to find only that Hernandez offered to pay "another person" for sex, rather than a prostitute, or someone he believed to be a prostitute. This instruction, modeled after a prior version of the statute, *see id.* § 76-10-1303(1)(a) (2017), was legally incorrect. Even so, we conclude it did not prejudice Hernandez.

¶30 Instruction 29 was titled "PATRONIZING A PROSTITUTE." And the phrase "PATRONIZING A PROSTITUTE" appeared two more times in the text of the instruction. It would have been difficult for the jury to ignore that it must find that Hernandez agreed to pay a prostitute—or, logically, someone he believed to be a prostitute—for sex. In assessing jury instructions, "we affirm when the instructions, taken as a whole, fairly tender the case to the jury even where one or more of the instructions, standing alone, are not as full or accurate as they might have been." *State v. Perdue*, 813 P.2d 1201, 1203 (Utah Ct. App. 1991) (cleaned up). Here, Instruction 29 fairly informed the jury that it must find that the person Hernandez offered to pay for sex was a prostitute—or at least someone he

believed to be one. And to the extent that the instruction omitted this latter element, it helped, not harmed Hernandez, as the jury could have concluded that because Detective 1 was not actually a prostitute, Hernandez could not be convicted at all. Thus, even had Counsel objected to Instruction 29, we fail to see how the inclusion of the precise language from section 76-10-1303(1)(a) would have resulted in a different outcome. Because Hernandez cannot demonstrate prejudice for purposes of ineffective assistance or plain error, his claims regarding the jury instruction both fail. *See State v. Popp*, 2019 UT App 173, ¶ 40, 453 P.3d 657.[5]

## CONCLUSION

¶31 Hernandez cannot show that Counsel provided ineffective assistance in failing to object to the detectives' testimony or to the erroneous jury instruction. Nor can he show that the district court plainly erred in failing to sua sponte raise these issues. Accordingly, we affirm.

_____

5. In Hernandez's view, his claims of error accumulate to warrant reversal of his conviction. "A reviewing court will reverse a jury verdict under the cumulative error doctrine only if the cumulative effect of the several errors undermines confidence that a fair trial was had." *State v. Miles*, 2020 UT App 120, ¶ 20 n.5, 472 P.3d 978 (cleaned up). Because none of the issues Hernandez raises amount to an error with potential prejudicial effect, "there are no errors to accumulate," *see id.*, and this claim likewise fails.