**2021 UT 35**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellee,*

*v.*

JOHN ATEM JOK,
*Appellant.*

No. 20190826
Heard March 8, 2021
Filed June 22, 2021

On Certiorari to the Utah Court of Appeals

Third District, Salt Lake City
The Honorable Ann Boyden
No. 121908775

Attorneys:

Andrea J. Garland, Salt Lake City, for appellant

Sean D. Reyes, Att'y Gen., Jonathan S. Bauer, Asst. Solic. Gen.,
Matthew B. Janzen, Salt Lake City, for appellee

JUSTICE HIMONAS authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE, JUSTICE
PEARCE, and JUSTICE PETERSEN joined.

JUSTICE HIMONAS, opinion of the Court:

### INTRODUCTION

¶1     John Atem Jok was convicted after a trial to the bench on
two counts of sexual battery, based primarily on testimony from
the victim, Beth.[1] Jok appealed, claiming that Beth's testimony
was so inherently improbable that it could not support a finding
of guilt. The court of appeals affirmed the trial court. We, in turn,
affirm the court of appeals. Beth's testimony, which contains only

---

[1] We employ a pseudonym for the victim.

minor inconsistencies and is supported by physical evidence, is far from inherently improbable.

¶2 This case also poses the question of whether defendants similarly situated to Jok must specifically raise inherent improbability before the trial court to preserve the issue for appeal. We hold that they do not. First, rule 52(a) of the Utah Rules of Civil Procedure does not require a defendant in a criminal matter to make a specific motion sounding in inherent improbability at a bench trial in order to preserve the issue. Second, the claim is effectively preserved without making a specific motion by the nature of a bench trial.

## BACKGROUND

¶3 Beth lived with her friend Rachel[2] in Rachel's apartment.[3] Beth slept on the couch with sheets, blankets, and pillows for her bed. Beth had previously lived with her mother but moved out because, despite having a learning disability and receiving social security disability benefits, Beth wanted to be on her own.

¶4 About 5 p.m. on the Saturday night in question, Jok and his friend, David Akok, stopped by the apartment for a visit. Beth had never met Jok or Akok before that night. The two men brought some beer with them, and they sat in the living room with Rachel and Beth, listening to music and drinking. At some point, Jok and Akok went to get more alcohol. After they returned, Beth, Rachel, and the two men continued listening to music. The men drank beer, and Beth drank vodka with juice. Beth stopped drinking at midnight because she did not drink on Sunday.

¶5 Around 1 a.m., Rachel went to bed. Sometime thereafter, Beth developed a headache and laid down on the couch with Jok sitting on one end of the same couch and Akok on the other. Beth

---

[2] Again, a pseudonym.

[3] On appeal from a bench trial, we view the evidence in the light most favorable to the district court's findings. *See Ockey v. Lehmer*, 2008 UT 37, ¶ 34, 189 P.3d 51. We take the relevant evidentiary facts from the transcript of the initial jury trial and the exhibits received at the bench trial, which the parties and the trial court agreed would serve as the substantive evidence for the bench trial.

fell asleep on the couch between the two men. She awoke to Jok and Akok touching her. Jok rubbed her breasts with his hands, reaching under her shirt and her bra. She told him to stop. He removed his hands from her breasts and moved down to her pants. Reaching into her pants and underwear, he inserted his fingers into her vagina, causing a sharp pain. Beth said "no" and again told him again to stop. Jok said nothing and removed his hand. Akok then began touching Beth's breasts. He laid on top of her, pinning her with his body. He grabbed her wrists and held them down above her head. While on top of Beth, Akok pulled down her pants and underwear. Beth pulled them back up. He pulled them down again and raped Beth, despite her continued verbal protests. Jok stayed nearby in the room and told Beth, "It's okay."

¶6    After the men were "done," Beth cleaned herself in the bathroom, went into Rachel's room, and laid on the floor. She told Rachel what had happened. When the two men would not leave, Rachel called the police and reported trespassers in the apartment.

¶7    When the police arrived, Beth filled out a witness report stating that Akok assaulted her first, and then Jok. Rachel also filled out a witness report in which she stated that Beth had come into her room at about 6 a.m. and told her that Akok had raped her and that Jok had touched her. Rachel stated that Beth said she had told the men to stop, "but they wouldn't."

¶8    After Beth gave her statements, she was taken to the hospital for an examination. The nurse who examined her said Beth showed no sign of intoxication and understood and answered all of the nurse's questions. Beth told her that Jok had digitally penetrated her, and that Akok had raped her. The physical examination corroborated Beth's account, as Beth had bruising to the hymen most consistent with digital penetration. She had also sustained vaginal lacerations and redness consistent with non-consensual intercourse. The nurse stated that she was "surprised at the amount of injury" Beth had sustained. After the examination, a police detective interviewed Beth. She told him that after Akok attacked her, she slept on the couch for four hours and then awoke to Jok touching her.

¶9    The State charged Jok with two counts of forcible sexual abuse and charged Akok with rape. At trial, Beth took the stand. She testified that she had "mixed up" the order of the events in her original statement to the police and that Jok had assaulted her first, then Akok. She also testified that she had not in fact gone

back to sleep after being assaulted but had misunderstood the detective's questions.

¶10 Beth testified that she drank less than half a bottle of vodka even though at the preliminary hearing she stated that she had consumed about half a bottle. When opposing counsel asked her if Akok sat at Beth's head or foot, Beth replied that he sat on the right side of the couch. When counsel repeated the question in a few ways to find out where Akok sat in relationship to Beth, she replied that she didn't know. Beth also indicated that she was confused by the questions.

¶11 On cross examination, the attorney for Mr. Akok asked Beth, "While [Akok is] still holding onto your wrist, he pulls your pants down, you pull them back up, he pulls them down again, and he pushes your legs up to your chest while he's still holding your wrists down?"

¶12 Beth responded, "Yes."

¶13 At the close of the State's case, Jok and Akok moved for a directed verdict due to insufficient evidence based on Beth's testimony. After the court denied the motion, Akok took the stand and told a very different story. He testified that Beth had accompanied the two men to purchase alcohol earlier in the evening and that he and Beth had consensual sex in the car. Jok did not testify. A jury convicted both men on all charges. The defendants appealed, and the court of appeals reversed the convictions, finding the prosecution's closing statements had deprived the men of a fair trial.

¶14 On remand, the State amended Jok's charges to two counts of sexual battery, each a class A misdemeanor. The parties agreed to a bench trial based on the record from the jury trial, and the same judge presided over Jok's trial on remand. The parties stipulated to the court receiving Rachel's witness statement as an exhibit because she was unavailable to testify. Jok did not renew his motion for a directed verdict. The trial court found him guilty on both counts.

¶15 Jok appealed his convictions, arguing that there was insufficient evidence to convict him because Beth's testimony was inherently improbable. The court of appeals affirmed the trial court. Jok filed a petition for certiorari, which we granted. We have jurisdiction under Utah Code section 78A-3-102(3)(a).

## STANDARD OF REVIEW

¶16   On certiorari, we review the court of appeals' decision for correctness. *State v. Berriel*, 2013 UT 19, ¶ 7, 299 P.3d 1133. In the process, we review legal conclusions for correctness. *Bangerter v. Petty*, 2009 UT 67, ¶ 10, 225 P.3d 874. But we grant deference to the trial court on findings of fact and will "overturn the district court's findings of fact only if they are clearly erroneous."[4] *Menzies v. Galetka*, 2006 UT 81, ¶ 58, 150 P.3d 480.

¶17   Regarding a sufficiency of the evidence challenge, we will only reverse the fact finder's verdict when "the evidence is sufficiently inconclusive or inherently improbable such that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime for which he or she was convicted." *State v. Robbins*, 2009 UT 23, ¶ 14, 210 P.3d 288 (citation omitted).

## ANALYSIS

¶18   Jok argues the court of appeals erred in not finding insufficient evidence to support a conviction, claiming that Beth's testimony was inherently improbable. As a threshold matter, the State argues that Jok failed to preserve the claim because he did not specifically raise it with the trial court as required by *State v. Holgate*. 2000 UT 74, ¶ 11, 10 P.3d 346. However, *Holgate* addressed the preservation requirements only at a jury trial, *see id.* ¶¶ 1-2, and Jok's conviction arose from a bench trial. So, *Holgate* does not apply to this case. Rather, rule 52(a) of the Utah Rules of Civil Procedure governs. And under rule 52(a)(3), a defendant is not required to make a motion to preserve a sufficiency of the evidence claim at a bench trial. Moreover, a sufficiency of the evidence claim is effectively preserved by the nature of a bench trial and does not require making a specific motion. We therefore address Jok's claim on the merits.

---

[4] We typically grant deference to the trial court's findings of fact because the court, seeing the witnesses live, is better suited to assess their credibility. We apply this standard in the present case because the same judge presided over both the live mistrial and the new trial based on the record. But this may not be the correct standard where a different judge, who did not experience firsthand the evidence and witnesses, presides over a retrial based solely on the record. In such a situation, the trial court's findings of fact may merit less deference.

¶19 Jok argues that Beth's testimony cannot support a conviction because her testimony meets the criteria to be disregarded as inherently improbable. Jok claims that Beth materially contradicted herself and her pre-trial statements while on the stand. He also argues that she made patently false statements about the placement of Akok's hands during the rape and that her testimony has no corroborating evidence. We disagree with Jok's claims and affirm the court of appeals. In affirming Jok's conviction, we also clarify that although we have previously considered certain factors in setting aside a testimony as inherently improbable, the test has always been and remains whether the testimony could support a conviction or whether "reasonable minds must have entertained a reasonable doubt that the defendant committed the crime for which he or she was convicted." *State v. Robbins*, 2009 UT 23, ¶ 14, 210 P.3d 288 (citation omitted).

## I. A DEFENDANT DOES NOT NEED TO RAISE A SUFFICIENCY OF THE EVIDENCE CLAIM AT A BENCH TRIAL TO PRESERVE THE ISSUE FOR APPEAL

¶20 The State argues that our holding in *State v. Holgate* requires a defendant to raise a sufficiency of the evidence claim with the district court at a bench trial in order to preserve the issue for appeal. *See* 2000 UT 74, ¶ 11, 10 P.3d 346 ("As a general rule, claims not raised before the trial court may not be raised on appeal."). But the State misunderstands our holding in *Holgate*. *Holgate* dealt exclusively with the preservation requirements at a jury trial, *see id.* ¶¶ 1-2, and so is inapplicable in this case because Jok's conviction arose from a bench trial. Rather, rule 52(a) of the Utah Rules of Civil Procedure governs the preservation requirements for a bench trial, providing that a defendant may challenge the sufficiency of the evidence even if the issue was not expressly raised at a bench trial. Furthermore, the claim is effectively preserved at a bench trial because the judge, as the factfinder, necessarily examines the sufficiency of the evidence without requiring a specific motion to do so. We therefore find Jok's challenge preserved for appeal.

¶21 An issue is preserved for appeal when the party raises it "in such a way that the trial court has an opportunity to rule on that issue." *Salt Lake City v. Josephson*, 2019 UT 6, ¶ 12, 435 P.3d 255 (citation omitted). We have held that the preservation rule "serves two important policies." *Holgate*, 2000 UT 74, ¶ 11. First, as a matter of procedure, "the trial court ought to be given an opportunity to address a claimed error and, if appropriate, correct

it." *Id.* (quoting *State v. Eldredge*, 773 P.2d 29, 36 (Utah 1989)). Second, the rule safeguards against a defendant failing to make an objection with the strategy of "enhanc[ing] the defendant's chances of acquittal and then, if that strategy fails, . . . claim[ing] on appeal that the Court should reverse." *Id.* (alterations in original) (citation omitted).

¶22   In *Holgate*, we addressed the preservation requirements for a sufficiency of the evidence claim at a jury trial. We noted that the court "has no duty under statute or rule to examine the sufficiency of the evidence unless the defendant moves the court to do so or there is an 'apparent' insufficiency." *Id.* ¶ 16 (citation omitted). We held that "as a general rule, a defendant must raise the sufficiency of the evidence by proper motion or objection to preserve the issue for appeal." *Id.* We found that this preservation requirement "ensures that the issue will be brought to the trial court's attention and the trial court will have the opportunity to address the issue." *Id.*

¶23   But *Holgate* delt with the preservation requirements for a jury trial, not a bench trial. And we expressly declined to address the preservation requirements for a sufficiency of the evidence claim arising from a bench trial. *Id.* ¶ 14 n.4. Rather, we noted that rule 52 addresses the requirements for a bench trial. *Id.*

¶24   Rule 52(a) provides in pertinent part that "[i]n all actions tried upon the facts without a jury. . . . [a] party may later question the sufficiency of the evidence supporting the findings, whether or not the party requested findings, objected to them, moved to amend them, or moved for partial findings." UTAH R. CIV. P. 52(a)(1), (3); *see also* UTAH R. CIV. P. 81(e) (stating that the civil procedure rules apply to criminal proceedings when there is not an applicable criminal rule).

¶25   Moreover, at a bench trial the judge acts as the factfinder and, unlike in a jury trial, has a duty to examine and make a finding on the sufficiency of the evidence. In this way, the issue is brought to the district court's attention each time the defendant argues, for example, that the State has failed to meet its burden of proof. And the court has the opportunity to rule on the issue when deliberating on the verdict. Because the district court is the factfinder in a bench trial and because this role necessarily requires the court to consider the sufficiency of the evidence, a defendant effectively preserves the claim at a bench trial

¶26   Because rule 52(a) allows a defendant to raise a sufficiency of the evidence claim on appeal without first raising it with the district court at a bench trial and because the claim is

effectively preserved by the nature of a bench trial, we hold that the issue in this case is sufficiently preserved.

## II. BETH'S TESTIMONY WAS FAR FROM INHERENTLY IMPROBABLE

¶27 Because we find the sufficiency of the evidence claim preserved, we now address Jok's argument that the court of appeals erred by not reversing his conviction. Specifically, Jok contends that Beth's testimony was so inherently improbable that it could not support a conviction. He argues it contained patently false statements and material contradictions. He also claims that there is no corroborating evidence to support Beth's testimony. We roundly disagree and affirm the court of appeals. Beth's testimony was overwhelmingly consistent and free from statements that would have cast substantial doubt on her testimony.

¶28 Appellate courts typically do not make credibility determinations, resolving any such "conflicts in the evidence in favor of the jury verdict." *State v. Prater*, 2017 UT 13, ¶ 32, 392 P.3d 398 (citation omitted). This is because the factfinder "serves as the exclusive judge of both the credibility of witnesses and the weight to be given particular evidence." *State v. Workman*, 852 P.2d 981, 984 (Utah 1993). But in "unusual circumstances" we may assess the factfinder's determination of the evidence. *Id.*

¶29 In determining sufficiency of the evidence, "we do not examine whether we believe that the evidence at trial established guilt beyond a reasonable doubt." *State v. Holgate*, 2000 UT 74, ¶ 18, 10 P.3d 346. Rather, we examine whether "the evidence is sufficiently inconclusive or inherently improbable such that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime for which he or she was convicted." *Id.* (citation omitted) (internal quotation marks omitted); *Salt Lake City v. Carrera*, 2015 UT 73, ¶ 10, 358 P.3d 1067. In other words, a sufficiency of the evidence claim is not an invitation for a reviewing court to substitute its judgment for that of the jury.

¶30 A court generally engages in a two-step analysis for a sufficiency of the evidence determination. First, the court determines whether the challenged piece of evidence is of such a poor quality that it should be disregarded as evidence. *See State v. Robbins*, 2009 UT 23, ¶ 16, 210 P.3d 288. The court may begin by examining the evidence alone, but should also consider other evidence as appropriate that substantiates or corroborates otherwise dubious evidence. *See id.* ¶ 19 ("The existence of any

additional evidence supporting the verdict prevents the judge from reconsidering the witness's credibility."); *Prater*, 2017 UT 13, ¶ 43, (noting that a handwritten letter and forensic evidence corroborated witness testimony). If the court determines that the challenged piece of evidence should be disregarded, it must then determine if sufficient evidence remains under which a reasonable jury could have convicted. *See Robbins*, 2009 UT 23, ¶¶ 20–23.

¶31 Under the umbrella of this analysis, we have attempted to identify some specific circumstances where disregarding a victim's testimony would result in insufficient evidence. Although a jury may appropriately convict a defendant on the basis of the "uncorroborated testimony of the victim," we have recognized that in rare cases a court may disregard such testimony because it is so incredibly dubious or inherently improbable that it could not support a conviction. *See id.*, ¶¶ 14–18 (citation omitted). Because other evidence may support testimony that would otherwise be considered improbable on its own, this testimony will generally be disregarded only when no corroborating evidence exists. In these cases, properly disregarding the testimony may result in insufficient evidence. Our attempt to clarify these rare circumstances has become known as the inherently improbable doctrine. *See id.* ¶¶ 14–17.

¶32 In our line of cases in this matter, we have identified three factors that merit consideration under an inherently improbable analysis: material inconsistencies, patent falsehoods, and lack of corroborating evidence. *See Prater*, 2017 UT 13, ¶¶ 33, 34; *Robbins*, 2009 UT 23, ¶ 19. But we warn today against inflexible reliance on these factors. The proper test is, and always has been, whether "reasonable minds must have entertained a reasonable doubt that the defendant committed the crime." *Holgate*, 2000 UT 74, ¶ 18 (citation omitted). In other words, our line of cases dealing with inherent improbability should not be understood as establishing a strictly factored test. Rather, they should be read as examples of sufficiency of the evidence claims based on the consideration of witness testimony.

¶33 For example, in *Robbins* a stepfather convicted of sexually abusing his stepdaughter challenged her testimony as insufficient to support his conviction. 2009 UT 23 ¶ 2. Under the first step of the sufficiency determination, we looked at whether the stepdaughter's testimony should be disregarded. *See id.* ¶¶ 22–23. We found that from her pre-trial statements to her trial testimony, the stepdaughter repeatedly changed her story about whether, how much, and under what circumstances her stepfather

abused her. *Id.* She then attempted to explain her inconsistent statements by saying she had bad hearing, which was patently false. *Id.* ¶ 23. We also considered that there was no other evidence that a crime had been committed—the stepdaughter had no bruising or marks that would be consistent with her story. *Id.* ¶¶ 5, 23.

¶34 Other statements by the stepdaughter also lacked credibility, such as her explanation of why she originally told the DCFS investigator that she felt safe with her stepfather. She claimed that she had worried someone might be hiding in the closet listening, even though there was no closet in the room where they had spoken to her. *Id.* ¶¶ 9, 23. Additionally, we recognized the stepdaughter likely had motivation to lie because of the hostility that existed between her divorced parents. *See id.* ¶¶ 1, 24. Weighing the patently false, materially inconsistent, and improbable statements with the lack of physical evidence and corroborating witnesses, we concluded that the district could have properly disregarded her testimony. *Id.* ¶ 23–25. And without her testimony, we held there was not enough evidence to convict the defendant.[5] *Id.* ¶ 25.

¶35 But in *State v. Prater*, we found that the testimony of the witnesses was properly considered by the jury in a murder trial. 2017 UT 13, ¶¶1–2. The defendant argued that the witnesses had changed their stories after being offered a plea deal in exchange for their testimonies against the defendant. *Id.* ¶ 30. We considered the conflicting testimonies and motivation to lie. *See id.* ¶¶ 37–42. We also considered that there was forensic evidence of

---

[5] The defendant in *Robbins* had made a motion to arrest judgment following the jury's verdict. *Robbins*, 2009 UT 23, ¶ 11. The district court expressed skepticism of the stepdaughter's testimony and surprise at the verdict but, applying a narrow view of the inherent improbability doctrine, did not believe it had discretion to reassess her testimony. *See id.* ¶¶ 11, 24. The court denied the motion. *Id.* ¶ 11. On appeal, the issue presented was whether the district court had *discretion* under the inherent improbability doctrine to disregard the testimony. *Id* ¶ 13. We found it did. *Id.* ¶ 23. And while "we normally afford weight to the trial court's denial of a motion to arrest judgment" when considering a sufficiency of evidence challenge, *id.* ¶ 24, we vacated Robbins' conviction due to "the trial judge's stated concerns and the clear record of inconsistencies in Taylor's testimony." *Id.* ¶ 25.

the defendant's guilt as well as a letter written by the defendant suggesting he had committed the crime. *Id.* ¶ 43. And in that case, we found that the testimonies should not be disregarded. *Id.*

¶36 We emphasize that while the criteria relied upon in our previous decisions are beneficial, they are not controlling. The line of cases dealing with inherently improbable testimony is useful in weighing whether sufficient evidence exists in cases challenging witness testimony. But a sufficiency of the evidence claim, including a showing that testimony cannot support a finding of guilt, is not sustained by merely meeting enumerated criteria considered in a previous case. Rather, when weighing the testimony in light of the other evidence, the testimony of the witness must "run so counter to human experience that it renders the[] testimony" inappropriate for consideration in sustaining a finding of guilt. *Id.* ¶ 39.

¶37 In the present case, Jok raises a sufficiency of the evidence claim, arguing that Beth's testimony "was too inherently improbable to support Jok's convictions for sexual battery." In determining whether insufficient evidence exists to support the conviction, we first examine whether Beth's testimony should be disregarded.

¶38 Jok claims Beth's testimony contained material inconsistencies and a pattern of inconsistencies that precluded a finding that Jok, and not Akok alone, engaged in the assault. Specifically, Jok claims that Beth's testimony contained material inconsistencies because she repeatedly confused where the two men sat on the couch and that, therefore, she was unable to adequately distinguish between them. But we disagree with Jok's characterization of the record and find that it fails to support his assertion. Twice Beth was shown a depiction of the couch where she was assaulted, and twice she stated that Akok sat on the left of the couch and Jok sat on the right. Only once opposing counsel asked where the men sat—without using a visual depiction of the couch for reference—did Beth falter in her description and become confused, stating that she did not know where Akok sat. We find that this testimony does not reflect a material inconsistency because we find it reasonable, based on the record, to conclude that Beth merely became confused when asked the question without a reference.

¶39 Next, Jok claims that Beth's testimony was inherently unreliable because her statements contained a pattern of inconsistencies that undermined her credibility. He points out that Beth originally stated that Akok assaulted her first but later

changed the order of the attacks and that Beth told the detective that she slept for four hours before telling her roommate what had happened but later said she did not sleep after the attacks. Beth also stated in her deposition that she had consumed about half a bottle of vodka but later testified that she consumed less than half a bottle. And Beth stated that she kept her bedding on the couch at all times but could not remember if she kept it on the couch during the day. Jok argues that these inconsistencies suggest Beth suffered from alcohol impairment and could not remember the events of that night, or that only Akok, and not Jok, attacked her.

¶40 We are not troubled by these statements. Even considered together, they do not approach the level of inconsistency that may cause us to disregard a testimony. While Beth may have confused the order of her attackers, she was consistent in describing the nature of the attacks and the identity of her attackers. And unlike the stepdaughter who attempted to explain her inconsistent statements with a patent falsity, Beth explained that the reason she told the detective she had gone back to sleep for four hours after the assaults, when she later testified she had not, was that she had been confused by the detective's question.

¶41 As to the amount of alcohol Beth consumed, we fail to find any worrisome contradiction between testimony that Beth drank "about half" or "less than half of a bottle of vodka." Without more detail quantifying these measurements, Jok fails to show how the two statements are necessarily inconsistent and could not describe roughly the same amount of alcohol consumed.

¶42 Finally, Jok argues Beth's testimony contained a patently false statement because she testified that Akok held her wrists above her head with both of his hands while pulling down her pants with both of his hands "at the same time." But this is not necessarily a patently false statement. Jok argues that the statement is patently false because it would have been physically impossible for Akok to use both hands to hold Beth's wrists while simultaneously using both hands to pull down her pants.

¶43 We disagree with Jok's characterization of Beth's testimony. Unlike lying about a medical condition, as in *Robbins*, the statement that two physically impossible things happened "at the same time" in the middle of a sexual assault is not a patent falsity. Rather, it is an expression of an experience relating how a sexual assault victim perceived the attack. In other words, testimony that an attacker committed simultaneous traumatic acts

falls squarely within the realm of "human experience." *See State v. Prater*, 2017 UT 13, ¶ 39, 392 P.3d 398. And we find no falsity in the testimony that, to Beth, the events seemed to occur at the same time.

¶44　Moreover, other evidence corroborates Beth's testimony of Jok's guilt. There is strong evidence of a crime. The nurse who examined Beth testified that Beth's vaginal wounds were consistent with her report of digital penetration and forced intercourse. Jok was present at the scene of the crime. The nurse also testified that Beth did not appear to be intoxicated and understood and clearly answered all the nurse's questions. This supports Beth's testimony that she stopped drinking at midnight and also refutes Jok's assertion that Beth was too drunk to identify her attackers.

¶45　Beth's testimony was overwhelmingly and materially consistent, and we find that it was sufficient to support a conviction. We affirm the court of appeals.

## CONCLUSION

¶46　We hold that Jok's sufficiency of the evidence claim was properly preserved because rule 52(a) of the Utah Rules of Civil Procedure provides that a sufficiency of the evidence issue is preserved for appeal following a bench trial even if the defendant did not specifically raise the issue and because a sufficiency of the evidence claim is effectively preserved by the nature of a bench trial. We clarify that an inherent improbability claim doesn't rely on a factored test but, like any sufficiency of the evidence claim, hinges on whether "reasonable minds must have entertained a reasonable doubt that the defendant committed the crime for which he or she was convicted." *State v. Holgate*, 2000 UT 74, ¶ 18, 10 P.3d 346 (citation omitted). And we affirm the court of appeals, finding the victim's testimony materially consistent and sufficient to support Jok's conviction.

———————————