**2024 UT App 128**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
NICOLE COTE ROSECRANS,
Appellant.

Opinion
No. 20210943-CA
Filed September 12, 2024

Third District Court, Silver Summit Department
The Honorable Richard E. Mrazik
No. 201500101

Freyja Johnson, Emily Adams, Cherise Bacalski, and
Jessica Holzer, Attorneys for Appellant

Sean D. Reyes and Natalie M. Edmundson,
Attorneys for Appellee

JUDGE AMY J. OLIVER authored this Opinion, in which
JUDGES RYAN M. HARRIS and JOHN D. LUTHY concurred.

OLIVER, Judge:

¶1     Nicole Cote Rosecrans was charged with one count of aggravated assault for threatening her mother, Nancy Rosecrans, with a butcher knife and two counts of misdemeanor assault for hitting Nancy in the face and biting her fingers.[1] After a bench trial, Nicole was acquitted of aggravated assault but convicted of the misdemeanor assault charges. Nicole now appeals that decision, asserting that her counsel rendered ineffective assistance for not arguing self-defense specifically on the misdemeanor

---

1. Because the parties share the same last name, we use their first names for clarity with no disrespect intended by the apparent informality.

charges and that the trial court committed plain error by not making findings of fact and conclusions of law in support of its verdict. We reject Nicole's arguments and affirm her convictions.

## BACKGROUND[2]

¶2      Nancy's adult daughter, Nicole, had been living with her for several months when they got into a physical altercation one evening in March 2020. Nicole "had been calling and texting [Nancy] all day wanting [Nancy] to go to the liquor store to buy alcohol." In response to push back from Nancy, Nicole texted her, "You trying to control my alcohol consumption makes me want to drink more just to own my own mind and body. Nancy [it's] not up to you to make those choice[s] for me."

¶3      When Nancy came home and told Nicole she had not gone to the liquor store, Nicole "immediately" hit Nancy in the face "with her fist or an object," knocking Nancy's glasses off her face. The first blow occurred in the foyer, where the two "started to struggle." As Nancy tried to push Nicole away "to keep her at arm's length," Nicole hit her with something "hard" she was holding in her hand and then bit two of Nancy's fingers with enough force to break the skin. Nancy pushed past Nicole and went down the hallway into the kitchen while Nicole continued to hit Nancy on the back of the head "with whatever the object was."

¶4      In the kitchen, Nicole "was raging," and Nancy told her she needed to "pack a bag and leave." The argument escalated to the point where Nancy slapped Nicole across the face with an open hand "to snap her out of the rage." Nicole reacted by pulling a large knife out of the wooden butcher block and threatening to

---

2. "On appeal from a bench trial, we view the evidence in the light most favorable to the district court's findings." *State v. Jok*, 2021 UT 35, ¶ 3 n.3, 493 P.3d 665.

hurt Nancy if she came after Nicole again. Nancy ran out of the house, locked herself in her car, and called the police.

¶5     When officers arrived, they took Nancy's and Nicole's statements, along with photos of their injuries. The photos taken of Nancy showed bloodied fingers, a blackened eye, and bruising on her left arm. Nicole's injuries were much less severe: she had a faint scratch on her right arm and a dime-sized bruise on her left upper arm. According to one officer, Nancy was "very agitated, very upset" and "holding her left wrist in a manner that [he] felt indicated [that] she was in some sort of distress or pain." The officer interacting with Nicole noted the "smell of alcohol" on her but not any signs of impairment.

¶6     Nancy and Nicole gave markedly different accounts of the incident to the police.[3] Nancy recounted the attack as described above, including how she pushed Nicole away from her but not including how she slapped Nicole. Nicole claimed the altercation was the result of Nancy's hoarding. According to Nicole, Nancy attacked her after realizing Nicole had thrown away some trash. Nicole said that Nancy hit her in the chest, face, and body, slapping her on the face and putting her fingers in Nicole's mouth "to fish-hook" her and turn her around. Nicole admitted "[m]aybe" biting Nancy's fingers "to break free." She asserted that Nancy then grabbed a small paring knife and chased Nicole into the living room. Nicole claimed Nancy dropped the knife and ran outside when Nicole threatened to show videos of the house to Nancy's friends since she knew Nancy was embarrassed about its state. Nicole denied pulling a knife on Nancy, admitted she "may have, like elbowed her," but claimed she did so only because Nancy "came at [Nicole] pretty hard."

¶7     One officer instructed another to go in the house and "look for the knife," not realizing there were two knives mentioned in

---

3. The officers' body camera videos of their interviews with Nancy and Nicole were both played at trial.

the descriptions of the assault. Initially, the only knife officers found on the scene was a short, three-inch paring knife on the coffee table. Nicole told the officer, "That's the knife my mother used on me." A knife matching Nicole's later description of an "8-inch black handled knife" that Nancy threatened her with was also found. But Nancy claimed neither of the knives collected by the officers was the knife Nicole used against her; no knife matching the one Nancy described was found.

¶8      Nicole was arrested and charged with aggravated assault, a third-degree felony—based on the threat with the large knife—and two counts of misdemeanor assault, class B misdemeanors—based on the blow to Nancy's face and the biting of her fingers. When Nicole was released from jail, she visited a friend of Nancy (Friend), hoping to find a place to stay. Worried about catching COVID-19, Friend refused to let Nicole stay and suggested Nicole call a domestic violence shelter. Friend testified that Nicole had told her she was the victim of the altercation, but then Friend overheard Nicole on the phone with the shelter, portraying herself as "the person who had done her mom harm" in what Friend assumed was an effort to not be allowed to stay there. The shelter, however, admitted Nicole.

¶9      At the hearing where Nicole waived her right to a jury trial, the trial court asked counsel about their expectations for a criminal bench trial's procedure, noting it had "never done one of these before." The court said that, at some point before the trial, it would like "some clarity on what the procedure will look like," asking in particular, "Am I filling out a verdict form? Am I making findings and conclusions? What [are] the parties' expectations?" Nicole's attorney (Counsel) replied, "Very well, Judge." But neither side filed any papers attempting to provide the court with any clarity.

¶10     At the final pretrial conference, the trial court—apparently having researched the issue on its own—again discussed procedural expectations and stated that, "under *State v. Finlayson*,

[2014 UT App 282, 362 P.3d 926,] I don't have to make any findings or conclusions, I just come out and announce the verdict. Okay." Counsel replied, "All right."

¶11 At trial, the State presented testimony from Nancy, four law enforcement officers, and Friend, who all testified as described above. Nancy testified first, detailing the attack. On cross-examination, Counsel asked Nancy about the specific words Nicole used when threatening Nancy with a knife. Nancy affirmed that Nicole said, "If you come any closer, I'm going to mess you up." Counsel asked if Nancy had been upset with Nicole the night of the altercation for throwing things out. Nancy said that was not "the subject of the conversation that night" and denied that it made her angry when Nicole "would try to clean up the house." Nancy also claimed not to have any memory of testifying at the preliminary hearing and said she was "dealing with a concussion" after being involved in a car accident a few months prior.

¶12 When the State rested, Counsel made a motion for a directed verdict, asserting that (1) on the misdemeanor assault charges, "there wasn't more than one commission of an act with unlawful force or violence," and that (2) on the aggravated assault charge, there "wasn't a threat to do bodily injury to another" but only a conditional threat that "would require the Court to consider a justification of force." The trial court, noting how the defense would affect the burden of proof and "taking into account [Nicole's] argument regarding a justified use of force," ruled that "the State has shown believable evidence of each element of each of the three counts" and "respectfully denied" the motion.

¶13 Nicole testified in her own defense and offered her markedly different account of the altercation, as summarized above. Nicole denied punching Nancy in the face or pulling a knife on her. Nicole also claimed the hallways and rooms were too full of things for her and Nancy to have moved around during the altercation as Nancy described. Regarding the phone

conversation she had with the shelter, Nicole denied admitting she was the aggressor and explained she had simply told the shelter she had just gotten out of jail after being arrested for being the aggressor but also told them Nancy attacked her and she defended herself.

¶14 In closing, Counsel highlighted discrepancies in Nancy's accounts of the altercation to undermine her credibility, noting she did not admit to slapping Nicole in her statement to the officers or in her preliminary hearing testimony. Counsel also pointed out Nicole denied threatening Nancy with a knife, but even if the court accepted Nancy's account of what happened in the kitchen, it only established that Nicole made a conditional threat after Nancy had slapped her. As Counsel argued, "using the threat of greater force to deter lesser force" is "something that can be done," much like the "reason you have a gun is to deter somebody from hurting you." Thus, "clearly the aggravated assault elements are not met."

¶15 In an oral ruling, the trial court acquitted Nicole of the aggravated assault charge but convicted her of the two misdemeanor assault charges. The general verdict form stated, "Count 1: Aggravated Assault," "Count 2: Assault (DV) (to wit, striking [Nancy] in the face and causing her to suffer a black eye)," and "Count 3: Assault (DV) (to wit, biting Nancy on the hand and causing two of her fingers to bleed)." The court filled out the general verdict form by checking the "not guilty" or "guilty" boxes but did not make any separate findings of fact or conclusions of law. Neither party requested findings or conclusions after the court read its verdict.

ISSUES AND STANDARDS OF REVIEW

¶16 Nicole presents two issues on appeal. As she concedes, both issues are unpreserved and "an appellate court will not typically reach that issue absent a valid exception to

preservation." *State v. Johnson*, 2017 UT 76, ¶ 15, 416 P.3d 443. First, she contends that Counsel rendered ineffective assistance in failing to argue self-defense with specific reference to the misdemeanor assault charges. "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Reid*, 2018 UT App 146, ¶ 17, 427 P.3d 1261 (cleaned up).

¶17    Second, Nicole contends the trial court committed plain error when it did not enter factual findings and conclusions of law after the bench trial. "Plain error is a question of law reviewed for correctness." *State v. Smit*, 2004 UT App 222, ¶ 7, 95 P.3d 1203.


ANALYSIS

I. Ineffective Assistance of Counsel Regarding Self-Defense

¶18    Nicole contends that Counsel rendered constitutionally ineffective assistance when he failed to raise self-defense as an affirmative defense to the misdemeanor assault charges. Because the trial court acquitted Nicole of aggravated assault after Counsel argued she threatened Nancy with the knife in self-defense, Nicole asserts that failure to make a specific self-defense argument with regard to the other two assault charges amounted to prejudicial deficient performance.

¶19    The Sixth Amendment provides a criminal defendant the right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 684–86 (1984). To prevail on an ineffective assistance claim, "a defendant must show (1) that his counsel's performance was objectively deficient, and (2) that the deficient performance prejudiced the defense." *State v. Marquina*, 2018 UT App 219, ¶ 36, 437 P.3d 628 (cleaned up). "A failure to prove either element defeats the claim." *Id.* (cleaned up).

¶20    To satisfy the first prong of an ineffective assistance claim, Nicole must prove that Counsel's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. "We judge the reasonableness of counsel's challenged conduct, viewed as of the time of counsel's conduct" and begin with "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *State v. Ames*, 2024 UT App 30, ¶ 18, 546 P.3d 356 (cleaned up), *cert. denied*, 550 P.3d 993 (Utah 2024). Before we determine whether Counsel's actions at trial constituted "sound trial strategy," we must first consider whether the fact that Nicole had a bench trial, rather than a jury trial, affects our analysis.

A.    Appeals from Jury Trials Versus Bench Trials

¶21    Utah's appellate courts have explained that their analysis of certain issues hinges on whether the case was tried to a jury or to the bench. Our supreme court long ago addressed whether evidentiary rulings require more or less deference in bench trials than jury trials, stating that a trial court's "rulings on evidence are looked upon with a greater degree of indulgence when the trial is to the court than when it is to the jury." *State v. Park*, 404 P.2d 677, 679 (Utah 1965) (cleaned up). This court has likewise indicated that "when a jury hears a case, the court is required to conduct the trial so that inadmissible evidence is not suggested to the jury by any means. However, judges in bench trials are presumed to be less likely than juries to be prejudiced by inadmissible evidence." *In re N.A.D.*, 2014 UT App 249, ¶ 5, 338 P.3d 226 (cleaned up). We have also recognized that a "district court's knowledge of a prior conviction does not raise the specter of prejudice to the same degree that a jury's awareness would," so we "assume[] that judges are capable of properly sorting and evaluating evidence presented to them and are much less subject to improper influence than a lay jury." *State v. Glasscock*, 2014 UT App 221, ¶ 32, 336 P.3d 46 (cleaned up); *see also State v. Adams*, 2011 UT App 163, ¶ 12, 257 P.3d 470 ("[J]udges in bench trials are presumed to be less likely than juries to be prejudiced by prior bad acts evidence."); *but cf.,*

*Kendall v. Utah Est. Planners PLLC*, 2023 UT App 82, ¶¶ 19–22, 534 P.3d 1140 (holding the same "standard for evaluating the necessity of expert testimony applies in legal malpractice cases" tried to the bench or a jury).

¶22   This distinction between jury trials and bench trials may also be the determining factor as to whether an issue is successful on appeal. For instance, a trial court's failure to "inquire of a defendant whether he wishes to waive his right not to appear in prison clothes" during trial "mandates reversal of [a] defendant's conviction" after a jury trial, but it is not reversible error in a bench trial. *State v. Cravens*, 2000 UT App 344, ¶¶ 16–17, 15 P.3d 635 (cleaned up). And our supreme court has held that the preservation requirements for a challenge to the sufficiency of the evidence differ between a jury trial and a bench trial. An insufficiency claim is "effectively preserved by the nature of a bench trial" but, in contrast, it must be specifically raised with the trial court in a jury trial. *State v. Jok*, 2021 UT 35, ¶ 18, 493 P.3d 665.

¶23   In sum, these cases reflect that judges come to a trial generally well-versed in the law while jurors generally do not, and that judges are not subject to many of the same concerns about prejudices and improper influences as jurors. Accordingly, fundamental differences exist between a case tried before the bench and a case tried before a jury that may affect our analysis.

B.    Analysis of Counsel's Performance in a Bench Trial

¶24   We now evaluate whether these distinctions between jury trials and bench trials impact the determination of whether Counsel performed deficiently. Because of how Nicole asserts Counsel should have raised self-defense—with a jury instruction and in closing—we conclude that the difference between a jury trial and a bench trial does matter in determining whether Counsel rendered deficient performance.

¶25  First, jury instructions are a mechanism by which "the court may instruct the jury on the law . . . ." Utah R. Crim. P. 19(b). In a bench trial, there is no jury, so jury instructions are not required. Nicole essentially concedes this point but argues nonetheless that because the State submitted four proposed jury instructions for the court's reference, it was deficient performance for Counsel not to submit one on self-defense. But a *Strickland* analysis does not ask us to measure Counsel's actions against the State's in a particular trial. Rather, we measure it "against prevailing professional norms," keeping in mind that our analysis must be "highly deferential" in light of "the variety of circumstances and the range of legitimate decisions regarding how best to represent a criminal defendant," *State v. Popp*, 2019 UT App 173, ¶ 26, 453 P.3d 657 (cleaned up).

¶26  Here, it was reasonable for Counsel to determine that jury instructions were not necessary, or even helpful, when the trial was being held before the court, not a jury. As the trial court itself noted, "[T]his isn't like a jury trial." The court went on to explain, "I know the law. I don't have to spend time reading jury instructions. There is only one of me, so there won't be time deliberating with others."

¶27  Accordingly, in a bench trial where there was no jury to instruct on the legal standard of self-defense, it was reasonable for Counsel to operate under the assumption the court knew the law and could apply it. Therefore, Counsel's decision not to provide a jury instruction on self-defense was reasonable where he was not required to do so and where the trial court explicitly stated that it did not "have to spend time reading" any jury instructions.[4]

---

4. We also fail to see how Counsel's decision not to provide such an instruction would have made any difference in the outcome of the case. Although Nicole acknowledges that Counsel provided "no proposed jury instructions, including no instructions on self-

(continued…)

¶28 Second, the fact that Counsel's closing argument did not specifically connect the dots on self-defense for the court does not amount to deficient performance because reasonable counsel could presume the court knew the legal standard for self-defense. Indeed, as a general matter, "in a bench trial, closing arguments are not necessary." *Iacono v. Hicken*, 2011 UT App 377, ¶ 12, 265 P.3d 116. "Trial judges are presumed to know the law and to apply it in making their decisions, and the need for a summary argument at the close of evidence is not always helpful to the trial court acting as the trier of both fact and law." *Id.* (cleaned up).

¶29 This is particularly true here, where the trial court demonstrated its knowledge of the legal requirements for self-defense. At the close of the State's case, the trial court correctly noted the burden of proof for self-defense when denying Counsel's motion for a directed verdict on the aggravated assault charge. Thus, where Nicole was not even entitled to present closing argument, we decline to find that Counsel performed deficiently in not explicitly arguing self-defense as to the misdemeanor charges.

¶30 Moreover, Nicole's argument is undermined by the fact that the trial court accepted self-defense on the aggravated assault charge and acquitted her even though Counsel did not specifically mention "self-defense" or "justification" or any similar term about the aggravated assault charge in closing. Instead, Counsel made broad and somewhat vague arguments that if using "the

---

defense or justification," the trial court nonetheless acquitted Nicole on the felony aggravated assault charge without the benefit of any instruction. Thus, acquittal did not depend on the presence of a jury instruction. *See, e.g.*, *State v. Cesspooch*, 2024 UT App 15, ¶ 19, 544 P.3d 1046 (applying a prejudice analysis to a split-verdict case and concluding that the defendant "has not persuaded us that there's a reasonable likelihood that the effect" of an error "was harmful to him"), *cert. denied*, 550 P.3d 994 (Utah 2024).

threat of greater force to deter lesser force" is "something that can be done," much like the "reason you have a gun is to deter somebody from hurting you," then "the aggravated assault elements are not met."[5]

¶31 If the trial court was able to extrapolate a self-defense argument from Counsel's ambiguous closing on the aggravated assault charge, then it follows the court could have applied self-defense to the misdemeanor charges as well. And, importantly, Counsel never argued that Nicole was *not* claiming self-defense to the misdemeanor charges, and nothing said in closing argument limited the trial court's consideration of self-defense to only the aggravated assault charge.

¶32 In sum, "we note that closing argument was made to the bench, not a jury," *State v. Weikert*, 2008 UT App 460U, para. 5, and here the trial judge was clearly aware that Counsel was making a self-defense argument that was not limited to any particular charge. Under these circumstances, it was not deficient performance for Counsel not to expressly raise self-defense as to the misdemeanor charges in closing because "trial judges are presumed to know the law." *Iacono*, 2011 UT App 377, ¶ 12 (cleaned up). For the same reason, it was reasonable for Counsel not to provide a jury instruction on self-defense. Thus, Nicole has not met her burden under *Strickland* of demonstrating that Counsel performed deficiently.

### II. Plain Error Regarding Findings and Conclusions

¶33 Nicole contends the trial court committed plain error when it did not enter factual findings and conclusions of law after the

---

5. We note that self-defense is an affirmative defense, not an element of aggravated assault. For "defense of self," *see* Model Utah Jury Instructions 2d CR530, and for "aggravated assault," *see* Model Utah Jury Instructions 2d CR1320, https://legacy.utcourts.gov/muji/?cat=2 [https://perma.cc/CP6E-YHXX].

bench trial, asserting the trial court was obligated to "find the facts specially and state separately its conclusions of law." Utah R. Civ. P. 52(a)(1). The State, however, argues plain error review is not available because Nicole invited any error by affirmatively consenting to not having findings and conclusions. Because we dispense of Nicole's argument under plain error, we do not address invited error.

¶34 "To prevail on a plain error claim, an appellant must show that (i) an error exists; (ii) the error should have been obvious to the district court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant." *State v. Charles*, 2020 UT App 154, ¶ 12, 477 P.3d 492 (cleaned up). "If any one of these requirements is not met, plain error is not established." *State v. Heward*, 2024 UT App 40, ¶ 15, 547 P.3d 226 (cleaned up), *cert. denied*, 550 P.3d 996 (Utah 2024). Because it was not obvious that the trial court needed to make findings in support of its verdict, Nicole's plain error claim fails.

¶35 "For an error to be obvious to the trial court, the party arguing for the exception to preservation must show that the law governing the error was clear, or plainly settled, at the time the alleged error was made." *State v. Johnson*, 2017 UT 76, ¶ 21, 416 P.3d 443 (cleaned up). Here, the law at the time of Nicole's trial was not entirely clear, and it would not have led the trial court to believe it needed to make separate findings in support of its verdict.

¶36 In *State v. Finlayson*, 2014 UT App 282, 362 P.3d 926, the defendant similarly opted for a bench trial. *Id.* ¶ 8. When the verdict was read, the defendant objected and claimed that "the trial court 'just simply said guilty' and did not give him 'any reasons' for its decision." *Id.* ¶ 15. In response, the trial court stated that "although it did not need to give reasons for the guilty verdict, it found" the victim's testimony "credible." *Id.* ¶ 32 n.14. We affirmed, noting that when factual issues "must be resolved

by the trial court but no findings of fact appear in the record, we assume that the trier of facts found them in accord with its decision, and we affirm the decision if from the evidence it would be reasonable to find facts to support it." *Id.* (cleaned up).

¶37 In turn, *Finlayson* was supported by *State v. Titus*, 2012 UT App 231, 286 P.3d 941, which also involved a defendant convicted in a bench trial who challenged the adequacy of the court's findings. *Id.* ¶¶ 1, 11. In a plain error analysis, we concluded the trial court did not err in its lack of findings, especially when it "twice offered to elucidate its reasoning" and trial counsel "did not request more detail." *Id.* ¶ 15.

¶38 In contrast, no Utah court has specifically held that rule 52(a)(1) of the Utah Rules of Civil Procedure applies to criminal bench trials. Nicole cites three cases to support her claim that it does, but none of them actually holds that "findings and conclusions must be made part of the record and may be stated in writing or orally following the close of the evidence."[6] Utah R. Civ. P. 52(a)(1); *see State v. Jok*, 2021 UT 35, ¶ 20, 493 P.3d 665 (applying rule 52(a)(3) in the context of "preservation requirements for a bench trial" in a challenge to sufficiency of the evidence); *State v. Holland*, 2018 UT App 203, ¶ 9, 437 P.3d 501 (same); *State v. Larsen*, 2000 UT App 106, ¶ 9 n.4, 999 P.2d 1252 (same). All three cases address rule 52(a) only in the context of sufficiency of the evidence challenges—specifically found in rule

---

6. Nicole also cites rule 81(e) of the Utah Rules of Civil Procedure, which states that the civil procedure rules apply to criminal proceedings when there is not an applicable criminal rule. But rule 81(e) also states that a civil rule may apply only when there is "no conflict with any statutory or constitutional requirement." *Id.* Nicole has not provided us with analysis that applying rule 52(a)(1) in the criminal bench context would not run afoul of a statutory or constitutional requirement, so we do not address it.

52(a)(3)—and none of them even mention subsection (a)(1) of the rule.[7]

¶39 Nicole's plain error claim therefore fails because the law is not "plainly settled" about applying rule 52(a)(1) to criminal bench trials. Thus, it was not an obvious error for the trial court to conclude that it did not need to make findings in support of its verdict.

## CONCLUSION

¶40 Because Nicole elected a bench trial, Counsel did not render ineffective assistance in not presenting a jury instruction and not arguing self-defense during closing as to the misdemeanor charges. We also conclude the trial court's lack of factual findings and conclusions did not amount to plain error. Therefore, we affirm Nicole's convictions.

---

7. Nicole correctly points out that *State v. Jok*, 2021 UT 35, 493 P.3d 665, states generally that "rule 52(a) of the Utah Rules of Civil Procedure governs" a bench trial in a criminal case. *Id.* ¶ 18. But Nicole asks us to review this issue for plain error and under a plain error review, this isolated statement does not suffice. The reference in *Jok* to rule 52(a) is in the context of preservation requirements for a sufficiency of the evidence claim, and it is countered by the presence of *Finlayson* and *Titus* in our caselaw. Therefore, this statement from *Jok* did not create an obvious requirement here for the trial court to make factual findings.