**2015 UT App 75**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
KENNETH RICHARD KAMROWSKI,
Defendant and Appellant.

Opinion
No. 20120595-CA
Filed April 2, 2015

Third District Court, Salt Lake Department
The Honorable Gary D. Stott
No. 101909360

Joseph Jardine, Attorney for Appellant

Sean D. Reyes and Mark C. Field, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES GREGORY K. ORME and STEPHEN L. ROTH
concurred.

CHRISTIANSEN, Judge:

¶1     Kenneth Richard Kamrowski appeals the trial court's denial
of his motion for a new trial on two charges of aggravated sexual
abuse of a child. Kamrowski argues that the trial court abused its
discretion in denying his motion because the court plainly erred in
admitting certain testimony. Kamrowski also argues that
insufficient evidence was introduced at trial to support his
conviction. We affirm.

BACKGROUND

¶2     Kamrowski was charged with sexually abusing a child while she was visiting his home. After returning home from one visit, the victim's stepmother observed that the victim was "really quiet and offish" and had scratched Kamrowski's face out of a photograph she kept. After her stepmother questioned her, the victim said that "one night [Kamrowski] came into my room, he pulled my underwear and my pajamas over and he was poking me with his fingers." The victim's father called the police, and a detective interviewed her about the allegations. The victim told the detective that Kamrowski had abused her on multiple occasions. The detective later interviewed Kamrowski, who denied ever touching the victim sexually.

¶3     The State charged Kamrowski, and he was tried on two counts of aggravated sexual abuse of a child. At trial, the victim's stepmother testified to the circumstances of the victim's visit to Kamrowski's home, the victim's behavior after returning from that visit, and the victim's statements about the abuse. The victim then testified regarding the two charged instances of abuse. The State also called a number of the victim's family members to testify about her behavior around the time of the abuse. Kamrowski testified in his own defense, denying that the abuse had happened. Kamrowski also called six witnesses to testify to his character for truthfulness, including his wife (Wife). Wife testified that she believed Kamrowski had never lied to her and that she considered him an honest man. She also testified that the victim had never talked to her about the abuse. On cross-examination, the State challenged Wife's testimony that she believed Kamrowski was honest and that the victim had never talked to her about the abuse. The State elicited testimony from Wife that she had received a letter from the victim regarding the abuse and that Wife had written back to her, stating, "Your letter said I didn't believe you, but [I do] believe you." The State concluded its cross-examination by asking Wife, "So you do believe [the victim] that this happened, correct?" Wife responded, "Well, I do. I'm here for [her], yes."

¶4   The jury found Kamrowski guilty on both counts. Kamrowski filed a motion for a new trial, arguing that the trial court erred in allowing Wife to testify that she believed the victim. The trial court denied the motion, and Kamrowski appeals.

## ISSUES AND STANDARDS OF REVIEW

¶5   Kamrowski argues that the trial court erred in denying his motion for a new trial. "When reviewing a trial court's denial of a motion for a new trial, we will not reverse absent a clear abuse of discretion by the trial court." *State v. Pinder*, 2005 UT 15, ¶ 20, 114 P.3d 551 (citation and internal quotation marks omitted). However, we review for correctness any legal determinations made by the trial court in deciding the motion. *See State v. Allen*, 2005 UT 11, ¶ 50, 108 P.3d 730.

¶6   Kamrowski also argues that the State failed to adduce sufficient evidence at trial for a jury to find him guilty. We will reverse a jury verdict only when the evidence and all reasonable inferences, viewed in a light most favorable to the verdict, are "sufficiently inconclusive or inherently improbable" that a reasonable jury must have entertained a reasonable doubt as to the defendant's guilt. *State v. Dunn*, 850 P.2d 1201, 1212 (Utah 1993).

## ANALYSIS

### I. The Trial Court Did Not Plainly Err by Allowing Wife's Testimony.

¶7   Kamrowski argues that the trial court erred by denying his motion for a new trial, because the trial court "committed plain error in permitting [Wife] to testify that she believed [the victim's] allegations of abuse and disbelieved [Kamrowski's] protestations of innocence." To obtain reversal under a plain error theory, a defendant must generally show that an error occurred, that he was

prejudiced by the error, and that the error should have been obvious to the trial court. *State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993). Specifically, Kamrowski argues that the State's question, "So you do believe [the victim] that this happened, correct?," together with Wife's response, violated rule 608 of the Utah Rules of Evidence, and that the error should have been obvious to the trial court.

¶8     A witness's credibility may generally be "attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character." Utah R. Evid. 608(a). This rule "permits testimony concerning a witness's general character or reputation for truthfulness or untruthfulness but prohibits any testimony as to a witness's truthfulness on a particular occasion." *State v. Rimmasch*, 775 P.2d 388, 391 (Utah 1989), *superseded on other grounds by* Utah R. Evid. 702. However, once a defendant offers witnesses as to his reputation for truthfulness, he opens the door for the prosecution to impeach those character witnesses. *State v. Watts*, 639 P.2d 158, 161 (Utah 1981). "In accordance with Rule 608, Utah courts have consistently held that impeachment evidence is admissible if it goes to credibility, even though it introduces evidence which would be otherwise inadmissible." *State v. Reed*, 820 P.2d 479, 481 (Utah Ct. App. 1991). Thus, a party may generally offer "'any testimony which would tend to dispute, explain or minimize the effect of evidence that has been given by one's opponent.'" *State v. Harper*, 2006 UT App 178, ¶ 18, 136 P.3d 1261 (quoting *State v. Sanders*, 496 P.2d 270, 274 (Utah 1972)).

¶9     In *State v. Harper*, a defendant was convicted of two counts of aggravated sexual abuse of a child. 2006 UT App 178, ¶ 1, 136 P.3d 1261. A witness for the State testified on cross-examination that he did not initially believe the victim's allegations of sexual abuse, because she had lied to him in the past. *Id.* ¶ 17. On redirect, the State asked the witness, "Do you believe [the victim] now?" and the witness replied, "Yes." *Id.* On appeal, the defendant argued

that this testimony was evidence of the victim's truthfulness on a particular occasion and was inadmissible under rule 608. *Id.* ¶ 18. However, this court concluded that the defendant had opened the door to the admission of such evidence by eliciting testimony about the victim's honesty, holding that because the defendant raised the issue of whether the witness believed the victim's story, "the State could 'minimize the effect of [that] evidence.'" *Id.* ¶ 19 (alteration in original) (quoting *Sanders*, 496 P.2d at 274).

¶10     Here, the State appears to have elicited Wife's testimony specifically to dispute or minimize the effect of Wife's direct testimony that she believed Kamrowski was an honest man, that he had never lied to her, and that the victim had never talked to her about the abuse. Indeed, the entirety of the State's cross-examination of Wife was focused on rebutting her direct testimony:

> Q: You just testified that you believe the defendant here is an honest man, correct?
> A: Yes, sir.
> Q: And let me talk to you about the allegations. You just testified that [the victim] never talked to you about these allegations, correct?
> A: Right.
> Q: Isn't it true she wrote you a letter to tell you about the allegations?
> A: Yes, that's right, yeah.
> . . . .
> Q: And you wrote her a letter back in response, correct?
> A: Right.
> Q: And in that letter you told her, and I quote, "Hi my sissy girl. I miss you." That's what you wrote to her, correct?
> . . . .
> A: Yes.
> Q: And you also told her, "Your letter said I didn't believe you, but [I do] believe you?"

> A: Right.
> Q: Correct?
> A: Right.
> Q: So you do believe [the victim] that this happened, correct?
> A: Well, I do. I'm here for [her], yes.

After the State concluded this cross-examination, Kamrowski attempted to rehabilitate Wife's credibility, asking, "[I]n light of the statement [the victim] has made do you still believe your husband to be an honest man?" to which Wife responded, "Well, they are both honest people. I believe my husband is honest yes."

¶11    Considered in context with Wife's other testimony, it is apparent that the testimony elicited by the State on cross-examination was designed to impeach Wife's credibility or minimize the effect of her testimony regarding Kamrowski's honesty. By eliciting testimony from Wife as to his truthfulness, Kamrowski opened the door to evidence tending to dispute that testimony, even if such evidence may have been otherwise inadmissible under rule 608.[1] *See Reed*, 820 P.2d at 481.

¶12    Moreover, we are not convinced that Wife's testimony had any significant effect on the jury's verdict such that Kamrowski would have been prejudiced by any error in its admission. To establish prejudice, Kamrowski must show that there is a "reasonable likelihood of a more favorable outcome" if Wife's

---

1. We note that the admission of such impeachment testimony does tend to carry a risk of unfair prejudice to a defendant. Thus, a trial court may properly exclude such evidence if it determines that the probative value of the impeachment evidence is substantially outweighed by the danger of unfair prejudice. Utah R. Evid. 403. However, Kamrowski has not raised a rule 403 challenge to this testimony, and we therefore do not determine whether the trial court plainly erred on that basis here.

testimony were excluded. *See State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993). On direct examination, Wife testified that she believed Kamrowski had never lied to her and that she considered him an honest man. The State attempted to impeach Wife's testimony with her concession that she believed the victim despite Kamrowski's denial that the abuse had occurred. On redirect, Wife stated that Kamrowski and the victim "are both honest people," and that she still believed Kamrowski was honest. Considered as a whole, Wife's equivocal testimony that, essentially, she believed both Kamrowski and the victim is simply unlikely to have swayed the jury in any meaningful way. We therefore conclude that it is not reasonably likely that the jury's verdict was affected by Wife's testimony.

¶13    Kamrowski has not shown that the trial court erred by allowing Wife's testimony or that he was prejudiced by that testimony. We therefore conclude that the trial court did not abuse its discretion by denying Kamrowski's motion for a new trial on the basis of plain error.

II. Sufficient Evidence Supports Kamrowski's Conviction.

¶14    Kamrowski also argues that the evidence presented by the State at trial was insufficient to support the verdict against him. He asserts that the victim's testimony was "internally inconsistent . . . in many ways and inherently implausible." Kamrowski relies on this court's decision in *State v. Hoyt*, 806 P.2d 204 (Utah Ct. App. 1991), to argue that the jury therefore could not have relied on the victim's testimony as a basis for guilt without "'[a]bundant other testimony . . . corroborat[ing] the child's testimony.'" (Alterations in original.) He claims that such corroborating testimony is lacking and his conviction should therefore be reversed.

¶15    A victim's testimony establishing the elements of a crime, even if uncorroborated, is generally sufficient to sustain a conviction. *See State v. Robbins*, 2009 UT 23, ¶ 14, 210 P.3d 288. In evaluating the victim's testimony, "the jury serves as the exclusive

judge of both the credibility of witnesses and the weight to be given particular evidence." *State v. Workman*, 852 P.2d 981, 984 (Utah 1993). However, while "the court must ordinarily accept the jury's determination of witness credibility, when the witness's testimony is inherently improbable, the court may choose to disregard it." *Robbins*, 2009 UT 23, ¶ 16.

¶16    Inherently improbable testimony includes those "circumstances where a witness's testimony is incredibly dubious and, as such, apparently false." *Id.* ¶ 18. We will evaluate a witness's testimony under this "apparently false" theory of inherent improbability "only in those instances where (1) there are material inconsistencies in the testimony and (2) there is no other circumstantial or direct evidence of the defendant's guilt." *Id.* ¶ 19. And we will overturn the jury's verdict on this basis only if we are convinced that the inconsistencies render the witness's credibility "so weak that no reasonable jury could find the defendant guilty beyond a reasonable doubt." *Id.* ¶ 18. Thus, inconsistencies with respect to peripheral issues or details of the abuse will generally not implicate the inherent-improbability doctrine but are matters for the jury to resolve in assessing the witness's credibility. *See State v. Gentry*, 747 P.2d 1032, 1039 (Utah 1987); *State v. Baker*, 963 P.2d 801, 809 (Utah Ct. App. 1998).

¶17    Kamrowski asserts that the victim's testimony at trial was inconsistent with her preliminary-hearing testimony and other pre-trial statements with respect to whether she ever fell asleep with the television on, whether Kamrowski woke her to turn off the television or turned it off himself, whether he entered the bedroom with a flashlight or not, whether her eyes were open or closed during the abuse, and how many times Kamrowski abused her. However, we are not persuaded that these are material inconsistencies that so undermine the victim's credibility that we could properly disregard her testimony. The presence of a flashlight, the state of the television, and the specifics of where the victim was looking during the abuse have "little bearing on the jury's ultimate determination" of Kamrowski's guilt. *See State v.*

*Lomu*, 2014 UT App 41, ¶ 17, 321 P.3d 243. Rather, these inconsistencies relate only to peripheral issues and therefore are not material and do not render the victim's testimony inherently improbable. *See Robbins*, 2009 UT 23, ¶¶ 16, 18.

¶18    While an inconsistency in the victim's testimony as to the number of times she had been abused would be a closer call, we are not convinced that her trial testimony is actually materially inconsistent with her pre-trial statements. At the preliminary hearing, the victim testified that while she believed she had been abused "probably two or three times," she could remember details of only two instances of abuse. At trial, defense counsel asked the victim, "You thought it happened three times, but you only remember two times?" to which she responded, "Yeah" and then confirmed that she had told her stepmother about only one instance of abuse. Thus, by our reading, the victim's trial testimony was in fact consistent with her earlier statements. Neither her inability to remember details of an alleged third instance of abuse or the fact that she initially told her stepmother about a single instance of abuse but was more forthcoming to investigators or prosecutors renders her statements "inherently contradictory" or otherwise apparently false. *Id.* ¶ 18.

¶19    Indeed, with respect to the critical issues to which the victim testified, Kamrowski has demonstrated no inconsistency. Kamrowski was charged with aggravated sexual abuse of a child. The relevant elements of the offenses are that Kamrowski touched the victim's "anus, buttocks, or genitalia" with "the intent to arouse or gratify the sexual desire of any person."[2] Utah Code Ann. § 76-5-404.1(2) (LexisNexis 2008). Kamrowski has identified no

---

2. The State also needed to prove that the victim was under the age of fourteen at the time of the abuse and that Kamrowski "occupied a position of special trust in relation to the victim." Utah Code Ann. §§ 76-5-404(1)(b), -404.1(4)(h) (LexisNexis 2008). The State established these elements through other witnesses whose testimony Kamrowski does not challenge on appeal.

inconsistencies in the victim's testimony that Kamrowski abused her in her bedroom at night while she was staying with Kamrowski, that he pulled down her clothing, and that he had touched her vagina in the first incident and her buttocks in the second. Accordingly, we conclude that Kamrowski has failed to demonstrate material inconsistencies in the victim's testimony that would justify disregarding that testimony in considering the sufficiency of the evidence supporting his conviction. *Robbins*, 2009 UT 23, ¶ 16. We therefore need not consider whether other corroborating evidence exists that would nevertheless support the jury's verdict. *Id.* ¶ 18. The record evidence, including the victim's testimony, is sufficient to support Kamrowski's conviction, and we therefore affirm the jury's verdict.

CONCLUSION

¶20 The trial court did not plainly err in allowing Wife to testify that she believed the victim, because Kamrowski opened the door to such impeachment by eliciting Wife's testimony as to Kamrowski's honesty. Thus, the trial court properly denied Kamrowski's motion for a new trial on this basis. Kamrowski has failed to demonstrate that the victim's testimony was inherently improbable, and we therefore conclude that the jury's verdict is supported by sufficient evidence.

¶21 Affirmed.