**2026 UT App 76**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
SHAUNE JOHNSON UNDERWOOD,
Appellant.

Opinion
No. 20240158-CA
Filed May 14, 2026

Eighth District Court, Duchesne Department
The Honorable Samuel P. Chiara
No. 201800215

Dylan T. Carlson, Debra M. Nelson, Benjamin Miller,
and Wendy M. Brown, Attorneys for Appellant

Derek E. Brown and Alexandra Herlong,
Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES GREGORY K. ORME and RYAN D. TENNEY
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1　A jury convicted Shaune Johnson Underwood of sexually abusing two of his female family members, Grace and Summer,[1] based on conduct alleged to have occurred decades earlier. Underwood raises two issues on appeal. First, he contends that his trial counsel (Counsel) rendered ineffective assistance by failing to argue that rule 807 of the Utah Rules of Evidence, the residual hearsay exception, permitted admission of certain statements made by a now-deceased family member during the police investigation. Second, he argues that the trial court plainly

---

1. Pseudonyms.

erred by failing to disregard the victims' testimony as inherently improbable and insufficient to support the convictions. We affirm.

## BACKGROUND[2]

¶2 The charges in this case stem from allegations that Underwood sexually abused both Grace and Summer over an extended period of time when they were young children. The alleged abuse occurred many years before the investigation and trial. Each reported the abuse to law enforcement in 2020. Both testified at trial and described repeated incidents of sexual abuse occurring over multiple years. The State's case relied on Grace's and Summer's testimony.

¶3 During the police investigation of Underwood, an officer interviewed Underwood's brother (Brother). According to a proffer provided by Counsel, Brother told the officer it was "impossible" for the abuse to have happened in the way that the victims had reported. He also called Grace "a big liar" and expressed his belief that Underwood "didn't do anything to [Grace]." Brother died prior to trial and was unavailable to testify.

¶4 Before trial, Counsel sought the admission of Brother's statements to police expressing disbelief about Grace's allegations. Counsel asserted that the victims' delay in reporting the abuse was purposeful and prejudicial such that Brother's statements should be admitted at trial as a remedy and to support Underwood's defense. Counsel acknowledged that Brother's statements qualified as hearsay, but he argued that Brother's report to police was reliable, necessary, and important to the defense. Counsel did not specifically cite rule 807 of the Utah Rules of Evidence, the residual hearsay exception, to support his admissibility argument. The trial court denied the request because

---

2. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly." *State v. Maese*, 2010 UT App 106, n.2, 236 P.3d 155.

Counsel had cited no rule of evidence or other legal authority to allow the admission of hearsay.

¶5 Underwood's defense at trial was that he never abused Grace or Summer. In support, Counsel cross-examined the victims about alleged inconsistencies in their accounts in an attempt to undermine the credibility of their allegations. To support his claims that it was impossible for the abuse to have unfolded in the ways alleged by the victims, Underwood also presented evidence that he has a very small penis and that he suffered from erectile dysfunction.

¶6 During the defense's case-in-chief, Counsel renewed the motion to admit Brother's hearsay statements from his police interview. Counsel argued that Brother's statements were recorded in a police report, which is admissible evidence. Alternatively, Counsel argued that Brother's statements were admissible under rule 806 of the Utah Rules of Evidence to impeach Grace's testimony. The trial court denied Counsel's renewed motion, concluding that despite being part of a police report, Brother's statements were hearsay and that the statements lacked sufficient indicia of reliability because Brother was not subject to cross-examination and the jury could not meaningfully assess the basis for his opinion.

¶7 In closing argument, the State focused on the lasting impact of childhood sexual abuse, emphasizing that the victims, now in their forties, still carried wounds from the abuse that occurred when they were young children. The prosecutor reviewed the testimony provided by the victims and addressed the defense's erectile dysfunction and small-penis arguments, asserting that Underwood's alleged conditions did not prevent the abuse from occurring. During his closing, Counsel argued that the State failed to meet its burden of proof, pointing to inconsistencies in the victims' testimony over time regarding the duration and frequency of the alleged abuse. Counsel highlighted Underwood's erectile dysfunction and small penis size as evidence contradicting the allegations, arguing the physical

limitations would have made the described abuse impossible. Counsel also noted the decades-long delay in reporting the abuse and questioned the credibility and motivation of the victims.

¶8    The jury convicted Underwood as charged. He now appeals.

ISSUES AND STANDARDS OF REVIEW

¶9    Underwood raises two issues on appeal. First, he contends that Counsel was constitutionally ineffective for failing to cite the residual hearsay exception under rule 807 of the Utah Rules of Evidence as a basis to admit Brother's statements to police. When raised for the first time on appeal, an ineffective assistance of counsel claim presents a question of law, which we evaluate for correctness. *See State v. Bedell*, 2014 UT 1, ¶ 20, 322 P.3d 697.

¶10   Underwood next contends that the trial court plainly erred by not sua sponte dismissing the charges against him at trial on the basis that there was not sufficient evidence presented to the jury to convict, where the victims' testimony was inherently improbable and could not support a guilty verdict. "When a jury verdict is challenged on the ground that the evidence is insufficient, we review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict." *State v. Hirschi*, 2007 UT App 255, ¶ 15, 167 P.3d 503 (quotation simplified). "And we will not reverse a jury verdict if we conclude that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *State v. Maestas*, 2012 UT 46, ¶ 177, 299 P.3d 892 (quotation simplified). Thus, "we may reverse a verdict only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he or she was convicted." *State v. Graves*, 2019 UT App 72, ¶ 17, 442 P.3d 1228 (quotation simplified).

ANALYSIS

I. Ineffective Assistance of Counsel

¶11    Underwood first argues that Counsel provided ineffective assistance of counsel by failing to argue that Brother's out-of-court statements to police were admissible under rule 807 of the Utah Rules of Evidence, the residual hearsay exception. To prevail on this claim, Underwood must satisfy the two-pronged test set out in *Strickland v. Washington*, 466 U.S. 668 (1984), by showing that (1) "[C]ounsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Id.* at 687.

¶12    To establish deficient performance, Underwood must show that Counsel's actions "fell below an objective standard of reasonableness." *Id.* at 688. When analyzing performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "Furthermore, we give wide latitude to trial counsel to make tactical decisions and will not question such decisions unless there is no reasonable basis supporting them." *State v. Gallegos*, 2020 UT 19, ¶ 34, 463 P.3d 641 (quotation simplified).

¶13    To establish prejudice, Underwood "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "To evaluate prejudice under *Strickland*, we assess counterfactual scenarios—that is, what would have happened but for the ineffective assistance." *State v. Bell*, 2025 UT App 169, ¶ 23, 581 P.3d 1030 (quotation simplified).

¶14    Underwood cannot prove that Counsel provided ineffective assistance by failing to cite rule 807 when moving to admit Brother's statements that Grace's allegations were impossible and that she was lying, because Counsel substantively argued what rule 807 requires and because the statements were likely not admissible under rule 807.

A.     Counsel substantively argued what rule 807 requires.

¶15     Hearsay is an out-of-court statement offered "to prove the truth of the matter asserted in the statement." Utah R. Evid. 801(c). Barring some exception, hearsay is inadmissible at trial. *Id.* R. 802. As relevant here, rule 807 permits a hearsay statement to be introduced at trial, even if not covered by a specific hearsay exception, when "(1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice." *Id.* R. 807(a).

¶16     In moving for the admission of Brother's hearsay statements concerning Grace's character for truthfulness, Counsel did not cite any particular rule of evidence that would justify their admission. Nevertheless, he substantively argued that the statements should be admitted because they were made to police and were therefore reliable, that the statements were necessary to the defense, and that excluding the statements would be fundamentally unfair. And the trial court rejected those arguments, concluding that the statements lacked sufficient indicia of reliability because Brother was not subject to cross-examination and the jury could not meaningfully assess the basis for Brother's statements.

¶17     Underwood's claim of deficient performance rests on Counsel's failure to formally cite rule 807 as a basis to admit Brother's statements; he does not contend that Counsel failed to raise the substantive argument. But defense counsel does not perform deficiently by failing to cite a particular rule when the substance of the argument has been considered and rejected. "The reasonableness of counsel's challenged conduct must be judged on the facts of the particular case, viewed as of the time of counsel's conduct." *State v. Ray*, 2020 UT 12, ¶ 31, 469 P.3d 871 (quotation simplified).

B.      Rule 807 likely would not have applied.

¶18    Moreover, even if Counsel had expressly invoked rule 807, thereby making the argument more explicitly, Brother's hearsay statements were unlikely to satisfy the rule's requirements. Rule 807 "was intended for use in those rare cases where, although the out-of-court statement does not fit into a recognized exception, its admission is justified by the inherent reliability of the statement and the need for its admission, and is therefore to be used rarely and construed strictly." *State v. Buttars*, 2020 UT App 87, ¶ 33, 468 P.3d 553 (quotation simplified). Brother's statements do not meet this high bar.

¶19    First, Brother's statements do not carry the "circumstantial guarantees of trustworthiness" necessary to qualify for admission under the residual exception. *See* Utah R. Evid. 807(a)(1). Brother provided no foundation for his conclusions that Grace was lying and that her allegations were impossible. And the circumstances giving rise to the statements further undermine their reliability. Brother made the statements to police during an investigation into serious allegations against his family member, Underwood. Given that Brother was living with Underwood and was estranged from Grace, Brother had every incentive to protect Underwood from criminal charges and no reason to benefit Grace.[3]

---

3. Underwood suggests that Brother's statements should be considered inherently reliable for the same reasons that statements against interest are considered inherently reliable. *See* Utah R. Evid. 804(b)(3). That is, Underwood argues that Brother's testimony is reliable because had he lied to police, he could have faced criminal liability. *See* Utah Code § 76-8-306(2)–(3). But even assuming for argument only that this is so, Brother's statements still do not meet all the requirements to be admitted as a statement against interest. Among other things, a statement against interest must be "supported by corroborating circumstances that clearly

(continued…)

¶20   Second, the statements were not "more probative" than other reasonably available evidence. *See id.* R. 807(a)(3). At trial, Brother's ex-girlfriend testified that Grace was "dishonest" and that she had a history of "stealing and lying." And Underwood presented evidence in the form of both lay and expert testimony suggesting that the allegations of abuse would not have been possible given his very small penis and erectile dysfunction.

¶21   Third, admitting the statements would not have served "the interests of justice." *Id.* R. 807(a)(4). Underwood claims that admission of Brother's statements was critical to his ability to present a complete defense because the statements were "reliable and relevant evidence that went to a key component of the case—the credibility of his accusers." But Underwood fails to grapple with the reality that, had Brother been alive and permitted to testify at trial, he generally would not have been permitted to testify that Grace was lying when she made the allegations against Underwood or that her allegations were impossible in the sense Underwood advances.

¶22   Utah law prohibits lay witnesses from offering opinions on the truthfulness of another witness on a particular occasion. *See id.* R. 608(a); *State v. Cegers*, 2019 UT App 54, ¶ 23, 440 P.3d 924. While Brother could have potentially shared his opinion about Grace's "*general* character for truthfulness," *Cegers*, 2019 UT App 54, ¶ 24 (emphasis added), the statements at issue are narrower than that—they concern Grace's truthfulness as it specifically relates to the allegations. Thus, admitting the statements would have run counter to Utah law and would have undermined, not promoted, justice.

¶23   In sum, Counsel did not perform deficiently because he made the substantive argument that Brother's hearsay statements

---

indicate its trustworthiness." Utah R. Evid. 804(b)(3)(B). Given that Brother provided no foundational evidence to support the trustworthiness of his statements, this requirement has not been met.

were admissible. And in any event, Counsel's failure to specifically invoke rule 807 as a basis for admitting Brother's hearsay statements did not prejudice Underwood because the statements were unlikely to satisfy the rule's requirements. Accordingly, Underwood's ineffective assistance claim fails.

## II. Inherent Improbability

¶24   Underwood argues the trial court plainly erred by failing to sua sponte disregard the victims' testimony as being inherently improbable. He contends that had the court properly excluded the testimony, there would have been "no other evidence against him" and, thus, the evidence would have been insufficient to support a conviction.

¶25   To demonstrate that the trial court committed plain error, Underwood "must show that (1) an error exists; (2) the error should have been obvious to the trial court; and (3) absent the error, there is a reasonable likelihood of a more favorable outcome." *State v. Skinner*, 2020 UT App 3, ¶ 30, 457 P.3d 421 (quotation simplified). Where, as here, the alleged error is the failure to sua sponte disregard witness testimony as inherently improbable, to prevail on a claim of plain error, the defendant must show that the testimony "was so obviously and fundamentally faulty that the trial court should have stepped in and excluded that testimony from the equation without specifically being asked to do so." *Id.*

¶26   The proper test to determine whether testimony is "inherently improbable" is "whether the testimony could support a conviction or whether reasonable minds must have entertained a reasonable doubt that the defendant committed the crime for which he or she was convicted." *State v. Jok*, 2021 UT 35, ¶ 19, 493 P.3d 665 (quotation simplified). Our supreme court has "identified three factors that merit consideration under an inherently improbable analysis: material inconsistencies, patent falsehoods, and lack of corroborating evidence." *Id.* ¶ 32. But while these factors "are beneficial, they are not controlling." *Id.*

¶ 36. Ultimately, testimony may be deemed inherently improbable only where the testimony, when weighed "in light of the other evidence, . . . run[s] so counter to human experience that it renders the testimony inappropriate for consideration in sustaining a finding of guilt." *Id.* (quotation simplified).

¶27 Underwood claims the victims' testimony in this case was inherently improbable because it contained material inconsistencies and lacked corroboration. As concerns the alleged inconsistencies in Grace's testimony, Underwood points to the following: Grace was unable to remember what time of day certain abuse occurred; Grace was unable to remember specific details about what Underwood's apartment looked like; Grace initially reported that the abuse had gone on for ten years, but at trial she stated it had lasted for only six years; Grace's pretrial statement about the location where the initial abuse took place was different from her account at trial; and the frequency with which Grace initially claimed the abuse had occurred was both impossible and contradicted her other statements. And as to Summer's testimony, Underwood contends that Summer's initial report about the number of times she had been abused was not consistent with her claim at trial that she could not tell "exactly" how many times. Similarly, Underwood notes that while Summer recounted during the preliminary hearing that Underwood's penis was erect when he abused her, when testifying at trial, she claimed that she did not remember if it was erect.

¶28 While Underwood has identified some instances where the victims' testimony was less than consistent, we do not think that these discrepancies amount to material inconsistencies warranting application of the narrow inherent improbability doctrine. *See State v. Doyle*, 2018 UT App 239, ¶ 17, 437 P.3d 1266 ("The inherent improbability doctrine has very limited applicability . . . ."). This is so for multiple reasons.

¶29 First, "[t]he mere fact that a witness's account changes between her initial interview with police and her testimony at trial is by itself insufficient" to establish material inconsistency. *State v.*

*Carrell*, 2018 UT App 21, ¶ 53, 414 P.3d 1030. To be materially inconsistent, "the witness's testimony *at trial* must be internally inconsistent; the fact that a witness's trial testimony is somewhat at odds with other evidence in the case, including . . . that witness's own prior statement, is not enough to render that testimony 'inherently improbable.'" *Id.* (emphasis added). Indeed, the question of "which version of a witness's conflicting account to believe" is nothing more than a "garden-variety credibility question[]," *State v. Hughes*, 2024 UT App 168, ¶ 33, 560 P.3d 188 (quotation simplified), *cert. denied*, 564 P.3d 957 (Utah 2025), which is exactly "the type of question we routinely require juries to answer," *State v. Prater*, 2017 UT 13, ¶ 39, 392 P.3d 398; *see also State v. Barnes*, 2023 UT App 148, ¶ 27, 542 P.3d 108 ("[I]t would be a rare case in which defense counsel could identify no inconsistencies in the account given by the State's main witness."). Thus, where the victims' trial testimony was internally consistent, any inconsistencies between the victims' pretrial statements and their trial testimony did not render the latter testimony inherently improbable but instead raised a credibility issue to be resolved by the jury. *See Prater*, 2017 UT 13, ¶ 39.

¶30 Second, many of the alleged inconsistencies concern "peripheral issues or details." *See State v. Hernandez*, 2024 UT App 127, ¶ 14, 557 P.3d 639 (quotation simplified), *cert. denied*, 561 P.3d 691 (Utah 2024). The time of day during which Grace was abused, specific details about what Underwood's apartment looked like, and where the abuse first took place "have little bearing on the jury's ultimate determination of [Underwood's] guilt." *State v. Kamrowski*, 2015 UT App 75, ¶ 17, 347 P.3d 861 (quotation simplified). Inability to remember "mere[] details supporting [a] primary assertion" are not material "but instead are within the range of normal, but flawed, human recollection—something that juries are capable of sorting through." *State v. Fletcher*, 2015 UT App 167, ¶ 9, 353 P.3d 1273. This is especially true in this case, where the victims were testifying about abuse that occurred decades earlier, when they were young children.

¶31 Third, Underwood's assertion that Grace's testimony was "glaringly false" rests on disputed factual premises and competing inferences. According to Underwood, Grace's initial report made to the police that she was abused "every day of her life" was apparently false on its face given that the two never lived together. But testimony is "apparently false" only if "its falsity is apparent, without any resort to inferences or deductions." *State v. Robbins*, 2009 UT 23, ¶ 17, 210 P.3d 288 (quotation simplified). The fact that Underwood and Grace did not live together does not mean that Underwood was not able to abuse her daily. This conclusion requires an inference that lack of physical proximity equated to an inability to commit the abuse; but once inference is required, testimony is no longer inherently improbable as a matter of law.[4]

¶32 For all these reasons, neither Grace's nor Summer's testimony was inherently improbable. Consequently, the trial court did not plainly err by not excluding it sua sponte.

CONCLUSION

¶33 Underwood has not shown that Counsel performed deficiently by failing to specifically invoke rule 807 of the Utah Rules of Evidence when moving for the admission of Brother's hearsay statements. Moreover, Underwood cannot show that Counsel's supposed deficiency caused him prejudice, because even had Counsel specifically invoked rule 807, Brother's hearsay statements were unlikely to satisfy the rule's requirements. Finally, Underwood has not shown that the trial court plainly erred by not sua sponte excluding the victims' testimony as inherently improbable. Affirmed.

———————

4. And at trial, when asked how often the abuse occurred, Grace responded, "If I was around him, it was daily, every day I was around him."